

EXHIBIT

B

ELECTRONICALLY FILED - 2023 Apr 27 9:19 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1002031

| | | |
|---|---|---|
| THE STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| CHARLESTON COUNY | ) | |
| | ) | |
| VIVIAN R. GALLMAN-DERIENZO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | SUMMONS |
| vs. | ) | (JURY TRIAL REQUESTED) |
| | ) | |
| WEBSTER UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

        YOU ARE HEREBY SUMMONED and required to answer the Complaint in this action a

copy of which is hereby served upon you, and to serve a copy of your Answer to the Complaint

on the subscriber at his office at 4000 Faber Place Drive, Suite 300, North Charleston, SC 29405

within thirty (30) days after the service thereof, exclusive of the day of service.  If you fail to

answer the Complaint within the time aforesaid, the Plaintiff in this action will apply to the Court

for the relief demanded in the Complaint and judgment by default will be rendered against you.

Respectfully Submitted,


*s/Bonnie Travaglio Hunt*
Bonnie Travaglio Hunt
Hunt Law LLC
Federal Bar # 07760
SC Bar # 12341
Attorney for the Plaintiff
4000 Faber Place Drive, Suite 300, N. Charleston, 29405
Post Office Box 1845, Goose Creek, SC 29445
(843)553-8709
Facsimile (843)492-5509
bthunt@huntlawllc.com



*s/Peter Kaufman*
Peter Kaufman
Kaufman Labor & Employment Solutions, LLC
SC Bar #100144
295 Seven Farms Dr. Ste C-267
Charleston, SC 29492
(843)513-6062
pkaufmanlaw@gmail.com


May 1, 2023

ELECTRONICALLY FILED - 2023 Apr 27 9:19 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1002031

ELECTRONICALLY FILED - 2023 Apr 27 9:19 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1002031

THE STATE OF SOUTH CAROLINA ) IN THE COURT OF COMMON PLEAS
)
CHARLESTON COUNY )
)
VIVIAN R. GALLMAN-DERIENZO, )
)
       Plaintiff, )
) COMPLAINT
vs. ) (JURY TRIAL REQUESTED)
)
WEBSTER UNIVERSITY, )
)
       Defendant. )
)

## COMPLAINT AND JURY DEMAND

The Plaintiff, Vivian R. Gallman-Derienzo, by and through her attorneys, Bonnie Travaglio Hunt of Hunt Law, L.L.C. and Peter Kaufman of Kaufman Labor & Employment Solutions, LLC, hereby complains against the Defendant, Webster University, as follows:

## NATURE OF THE ACTION

1. This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. §2000e, *et seq*.). The jurisdiction of this Court is invoked to secure protection of and redress deprivation of rights guaranteed by federal law and state law which rights provide for injunctive and other relief for illegal discrimination in employment.

2. This action is brought pursuant to the Age Discrimination in Employment Act of the United States of America.

3. This action is brought pursuant to Federal Law and the laws of South Carolina.

## PARTIES

4. The Plaintiff is an individual who resided in the State of South Carolina at all times relevant to this action.

3

ELECTRONICALLY FILED - 2023 Apr 27 9:19 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1002031

5.  At all relevant times to the allegation in this complaint, the Plaintiff was an employee of the Defendant in South Carolina.

6.  At all times, relevant to the allegations in this complaint, the Plaintiff was employed at a facility operated by the Defendant in the State of South Carolina.

7.  On information and belief, Defendant is an entity conducting business and affecting commerce in the state of South Carolina properly within the jurisdiction of the Court.

8.  At all times, relevant to the allegations in this Complaint, the Defendant employed more than 20 persons in the State of South Carolina.

9.  At all times, relevant to the allegations in this Complaint, the Defendant operated a facility in the State of South Carolina.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 as this matter presents a federal question.

11. Jurisdiction of this cause arises under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. Section 2000e-2(a) and Section 2000e-3(a), as amended by the Civil Rights Act of 1991 (CRA Section 91), 42 U.S.C. Section 1981A *et seq.* and the Age Discrimination in Employment Act of 1974 (ADEA), 29 U.S.C. Section 626 *et seq.*

12. Jurisdiction of this Court arises under 42 U.S.C. 1981.

13. The Charleston Division is the proper venue for this action pursuant because this is the District and Division in which a substantial part of the events or omissions giving rise to the claims occurred.

ELECTRONICALLY FILED - 2023 Apr 27 9:19 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1002031

## Procedural Prerequisites

14.    The Plaintiff filed a charge of discrimination against the Defendant with the Equal Employment Opportunity Commission ("EEOC") alleging race discrimination, age discrimination, hostile work environment and retaliation.

15.    The Plaintiff's first charge of discrimination was filed on November 23, 2021, and set forth the following:

I.      *That I am a current employee of the Webster University. That I am the director of the Charleston Campus. That I have been considered an exemplary employee throughout my employment.*

II.     *That I have suffered discrimination since last year at the hands of my direct supervisor. That I have been treated differently than other employees based on my race (Black) and Age (57 years old).*

III.    *That on January 15, 2021 I filed a Formal Complaint of Discrimination. As a result of my formal complaint, I have been suffering from harassment, retaliation, and a hostile work environment. My employer has attempted to discipline and investigate me for pretextual reasons.*

IV.     *That as a result of my complaints I have been suspended, disciplined and terminated. That actions taken by employer are in direct retaliation for my complaints regarding discrimination, hostile work environment and retaliation.*

V.      *That the actions of my employer have affected the terms and conditions of my employment.*

VI.     *That the hostile work environment has been severe and pervasive.*

VII.    *That I have been discriminated against based on my race in violation of Title VI I.*

VIII.   *That I have been discriminated against based on my age in violation of the ADEA.*

IX.     *That I have suffered a hostile work environment and retaliation for my complaints in violation of Title VII and the ADEA.*

16.    The EEOC conducted an investigation into the Plaintiff's charge of discrimination.

17.    The Defendant submitted a Position Statement to the EEOC regarding the Plaintiff's Charge of Discrimination on July 30, 2021. The Position Statement contained several False Allegations and False Statements regarding the Plaintiff and her employment.

ELECTRONICALLY FILED - 2023 Apr 27 9:19 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1002031

18. That the Plaintiff received a right to sue from the U.S. Equal Employment Opportunity Commission on February 27, 2023.

19. That the Right to Sue set forth the EEOC issues the following determination:

*NOTICE TO THE PERSON AGGRIEVED:*

*Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA): This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)*

 *More than 180 days have passed since the filing of this charge.*

 *The EEOC is terminating its processing of this charge.*

*Age Discrimination in Employment Act (ADEA): You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court WITHIN 90 DAYS \*of your receipt of this Notice.\* Otherwise, your right to sue based on the above-numbered charge will be lost.*

*Equal Pay Act (EPA): You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay*

ELECTRONICALLY FILED - 2023 Apr 27 9:19 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1002031

*due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.*

*If you file suit, based on this charge, please send a copy of your court complaint to this office.*

20. That fewer than ninety days have elapsed since the Plaintiff received the Right to Sue on the Plaintiff's charge of discrimination.

## POLICIES OF WEBSTER UNIVERSITY

21. *Webster states on its website:*  At Webster, our mission is to develop and manage value-added human resources policies and programs; provide expert consultation, services and solutions in an efficient and customer-focused manner; and provide our employees with the tools necessary to meet employee needs. We are committed to the fair selection and development of our diverse workforce.  We are committed to providing our employees a stable work environment with equal opportunity for learning and personal growth. We also act as a liaison between the institution and the employee to inform, motivate, educate, and train in all matters relating to employment and employee benefits. We strive to enthusiastically and professionally project a positive image of the University, thereby creating a desire to become and remain an integral part of our community.

22. At Webster University, there is a place for everyone. With efforts ranging from our Diversity, Equity & Inclusion Council to sponsored events, we are committed to inclusive excellence throughout our university. Learn more about our rich tradition of celebrating what makes us unique.

ELECTRONICALLY FILED - 2023 Apr 27 9:19 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1002031

23.    **CORRECTIVE ACTION**

*Corrective Action Progressive corrective action is used for regular full-time and part-time employees who are not in their introductory/probationary period, and may include verbal warning, written warning, suspension, and ultimately discharge. It is expected that conversations occur before any warnings have been issued outlining the basic expectations, job performance duties, and other guidelines that need to be followed. Supervisors should refer to the Human Resources (HR) website for all policies http://www.webster.edu/human-resources/policies. The purpose of corrective action is to inform the employee of inadequacies in performance or instances of improper behavior, clarify what constitutes satisfactory performance or behavior, instruct the employee on what action must be taken to correct the performance or behavior problem, and notify the employee of what action will be taken in the future if the expectations are not met. It is our goal to give employees every opportunity to succeed. There are several levels of corrective action, each progressively more serious, which may be used to correct employee performance and behavior. However, Webster University reserves the right to skip one or more steps depending upon the severity of the situation. In all cases, the department head and Human Resources should be consulted prior to taking any corrective action. These steps include: Verbal Warning - An employee may be issued a verbal warning for a performance or behavior problem. Verbal warnings are typically issued during a private conference between the supervisor and the employee where the supervisor explains the problem and what the employee must do to return to satisfactory status. The supervisor should document the conversation by making notes on the attached Verbal Warning template. The employee should be informed that the conference is being conducted for the purpose of issuing a verbal warning. This ensures that the employee is aware that corrective action is taking place. The verbal warning may also specify a review period, if appropriate, in which the employee's behavior or performance will be reviewed. A verbal warning template is attached to this policy. Written Warning - Employees may be issued a written warning which contains the following information: a description of the specific problem or offense, the most recent incident and when it occurred, previous actions taken to correct the problem (if applicable), expectations and acceptable standards of performance, and warning that further unsatisfactory behavior or performance may result in further disciplinary action. Typically, the written warning is issued and discussed with the employee in private conference with the supervisor. A copy of the written warning should be given to the employee and a copy placed in the employee's official personnel record in Human Resources. The written warning may also specify a review period, if appropriate, in which the employee's behavior or performance will be reviewed. A written warning template is attached to this policy. Final Written Warning - A final written warning notice should be issued to the employee who has officially been advised repeatedly of the nature of their performance or behavior misconduct. This warning will serve as a notification that any future violations may result in termination. Suspension – If warranted, employees may be suspended without pay for incidents that are serious enough to warrant summary*

ELECTRONICALLY FILED - 2023 Apr 27 9:19 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1002031

*suspension, or after less severe disciplinary actions have been taken. This suspension without pay will be in accordance with Federal, State, and local wage-and-hour laws. The duration of the suspension should be commensurate with the offense (usually 1 to 3 days), and will be determined jointly by the employee's supervisor and Human Resources. Typically, the employee will be informed of the suspension in private conference with their supervisor and Human Resources. The employee is given a letter detailing the basis for the action which specifies: the length of the suspension (beginning and ending dates); a description of the specific problem or offense; the most recent incident and when it occurred; previous actions taken to correct the problem, if applicable; expectations and acceptable standards of performance; and a warning that further unsatisfactory behavior or performance may result in further corrective action, up to and including discharge. The suspension letter may also specify a review period, if appropriate, in which the employee's behavior or performance will be reviewed.*

*Discharge - Employees may be discharged for incidents that are serious enough to warrant summary discharge, or after less severe disciplinary actions have been taken. It is advisable to discharge an employee in private conference with their supervisor, Human Resources and other appropriate levels of supervision. During this conference, the employee is usually given a letter or a memorandum clearly stating the effective date of discharge.*

*When allegations are serious enough to merit immediate discharge, it may be advisable to suspend an employee, pending investigation. This suspension is for the purpose of investigating the problem and conferring with appropriate officials regarding the decision to discharge, and should be so communicated to the employee. If the investigation does not result in further action being taken, the suspension will be with pay.*

*Reasons for immediate discharge include, but are not limited to:*

- *Theft;*
- *Intoxication on the job;*
- *Violence or threat of violence;*
- *Conviction of a felony;*
- *Negligent, careless or intentional conduct that results in damage or the risk of damage to property or individuals;*
- *Falsifying time cards*
- *Falsification of Employment Application or other necessary data requested during the employment process*
- *Falsification, alteration or improper handling of University-related records*
- *Disclosure or misuse of confidential information, including government-mandated regulations that outline the treatment of confidential information*
- *Behavior/language of a threatening, abusive or inappropriate nature*
- *Any other conduct that reflects poorly on Webster University and could result in severe negative implications on the University's reputation, standing, rating, etc.*

*Date Revised: 3/7/18*

ELECTRONICALLY FILED - 2023 Apr 27 9:19 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1002031

*VERBAL WARNING*
*EMPLOYEE NAME:* _____
*DATE:* _____
*DEPARTMENT:* _____
*The purpose of this verbal warning is to memorialize our conversation regarding deficiencies in your conduct and/or performance. The intent is to bring these issues to your attention and help you to take remedial steps toward correcting them. Failure to do so may result in further corrective action.*
*REASON FOR WARNING:*
*CORRECTIVE ACTION REQUIRED:*
*Supervisor:*
_____
*Date:_* _____
*A copy of this document will be retained in your permanent file.*
*WRITTEN WARNING*
*EMPLOYEE NAME:* _____
*DATE:* _____
*DEPARTMENT:* _____
*The purpose of this written warning is to bring your attention to ongoing deficiencies in your conduct or performance. On* _____, *you were counseled regarding*
_____. *Unfortunately, you have not made sufficient progress in addressing these issues, necessitating this written warning.*
*REASON FOR WARNING:*
*CORRECTIVE ACTION REQUIRED:*
*My supervisor has discussed the above with me. I understand the contents and acknowledge and understand the corrective action required. I also acknowledge and understand the potential consequences of noncompliance.*
*Signatures:*
*Employee:* _____ *Date:_* _____
*Supervisor:* _____ *Date:_* _____
*A copy of this document will be retained in your permanent file.*
*FINAL WRITTEN WARNING*
*EMPLOYEE NAME:* _____
*DATE:* _____
*DEPARTMENT:* _____
*The purpose of this written warning is to once again bring to your attention ongoing deficiencies in your conduct and/or performance. On* _____ *and* _____, *you were counseled regarding* _____. *Unfortunately, you have not made sufficient progress in addressing these issues, necessitating this final written warning. Failure to make immediate and sustained improvement will result in further corrective action, up to and including termination.*

ELECTRONICALLY FILED - 2023 Apr 27 9:19 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1002031

*REASON FOR WARNING:*
*CORRECTIVE ACTION REQUIRED:*
*My supervisor has discussed the above with me. I understand the contents and acknowledge and understand the corrective action required. I also acknowledge and understand the potential consequences of noncompliance.*
*Signatures:*
*Employee:_____ Date:__ _____*
*Supervisor:_____ Date:_ _____*
*Division/Dept. Manager _____ Date:_ _____*
*A copy of this document will be retained in your permanent file.*
*SUSPENSION/DISCHARGE*
*EMPLOYEE NAME: _____*
*DATE: _____*
*DEPARTMENT: _____*
*The purpose of this written warning is to bring your attention to ongoing deficiencies in your conduct or performance. On multiple occasions, you were counseled regarding _____ , but despite numerous opportunities to correct these deficiencies, you have failed to do so. As a result, it has been determined that you will be:*
*• Suspended _____ Working Day(s) from_ _____ Through _____*
*• Discharge effective _ _____*
*Remarks: Explain reasons for suspension or discharge, including specific details of incident or violation; include prior warning(s).*

*My supervisor has discussed the above with me. I understand the contents and acknowledge and understand the corrective action required.*
*Signatures:*
*Employee:_____ Date:_____*
*Supervisor: _____ Date:_____*
*Division/Dept. Manager_____ Date:_ _____*
*A copy of this document will be retained in your permanent file.*

24.    *III. RETALIATION*

*A. Prohibition of Retaliation. The University strictly prohibits retaliation, including intimidation, threats, coercion, or discrimination against any individual for the purpose of interfering with any right or privilege secured by Title IX or the Title IX Regulations, or because the individual has made a report or complaint, testified, assisted, or participated or refused to participate in any manner in an investigation, proceeding, or hearing under such regulations.*
*B. Conduct Constituting Retaliation. Intimidation, threats, coercion, or discrimination, including charges against an individual for code of conduct violations that do not involve sex discrimination or sexual harassment, but arise out of the same facts or circumstances as a report or complaint of sex discrimination, or a report or formal complaint of sexual harassment—if made for*

ELECTRONICALLY FILED - 2023 Apr 27 9:19 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1002031

*the purpose of interfering with any right or privilege secured by Title IX or the Title Regulations—constitutes retaliation.*

*C. Exceptions.*

*(1) The exercise of rights protected under the First Amendment does not constitute retaliation prohibited under this Policy. Likewise, the exercise of academic freedom, which is protected by the First Amendment, does not constitute retaliation under this Policy.*

*(2) Charging an individual with a code of conduct violation or other policy violation for making a materially false statement in bad faith in the course of a grievance proceeding under this Policy does not constitute retaliation prohibited under this Policy; provided, however, that a determination regarding responsibility for violation of this Policy, alone, is not sufficient to conclude that any party made a materially false statement in bad faith.*

*D. Complaints of Retaliation. Complaints alleging retaliation under this Policy may be filed according to the grievance procedures for sex discrimination, including sexual harassment, that are set forth in this Policy.*

*E. Penalties for Retaliation. A violation of this Policy may result in disciplinary action. The same range of disciplinary actions that are described in this Policy as available for a finding of sex discrimination, including sexual harassment, can be imposed as result of a finding that prohibited retaliation has occurred.*

25.     The Defendant also presented the Plaintiff with a Grievance Policy and Procedure.

26.     The Plaintiff was presented with the policies and procedures via access to the website.

## FACTUAL BACKGROUND

27.     That the Plaintiff is a resident of the United States and at all relevant times the Plaintiff resided in South Carolina.

28.     That the Plaintiff is a fifty-nine (59) African American female.

29.     The Plaintiff applied for a position with the Defendant on May 6, 2013. The Plaintiff had several years of higher education experience. At the time the Plaintiff had a Bachelor's of Science in Sociology/Psychology, Masters in Human Resource Development/Mgmt. and a PhD in Higher Education Administration.

ELECTRONICALLY FILED - 2023 Apr 27 9:19 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1002031

30. That the Plaintiff was hired by the Defendant, Webster University on June 6, 2013, as the Director of the Charleston Campus.

31. The Plaintiff's employment performance was exemplary. On the Plaintiff's Evaluations she received Meets or Exceeds on all evaluations from 2015 to 2020.

32. The Plaintiff was supervised by Donavan Outten from 2016 to 2018 with no discipline issues.

33. In 2017, the Plaintiff receive Exceeds or Meets in all categories on her evaluation from Donavan Outten. The Evaluation operates as evidence of the Plaintiff's exemplary performance.

34. In 2018, the Defendant hired Beth Vivaldi as the Regional Director of South Carolina Extended Campuses. Vivaldi became the Plaintiff's supervisor.

35. On the Plaintiff's 2018 evaluation conducted by Donavan Outten the Plaintiff received Exceeds or Meets in all categories on her evaluation.

36. In November of 2018, Vivaldi falsely accused the Plaintiff of having ill will towards administration and the university. The Plaintiff challenged her perception of the Plaintiff's performance. Vivaldi failed to specify any performance issues with the Plaintiff.

37. In February of 2019, Vivaldi falsely accused the Plaintiff of failing to comply with a directive. The Plaintiff challenged Vivaldi's interpretation of the alleged directive. The Plaintiff never failed to comply with any directive.

38. The Plaintiff received meets on her 2019 evaluation by Vivaldi. Vivaldi failed to include any issues of performance in the Plaintiff's evaluation.

39. On October 16, 2019, Vivaldi sent the Plaintiff an email that stated "I too am glad we have gotten past any thought of ill-intent-not so-just trying to do the job as best I can with the

ELECTRONICALLY FILED - 2023 Apr 27 9:19 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1002031

help of all my partners-you-Sherriel-George and Mel. ☺" The Plaintiff responded to Vivaldi with: "So, just to be clear, I never had any thoughts of ill-intent and I don't think you did either. I believed you were and are just trying to do the best job you can. That said, I needed to make it clear that I would not be bullied or intimidated or characterized as not having done the job-I did the job. The campuses were all in the black when they were passed off to you. In fact, the enrollments were stronger than they are now and no allowances were granted concerning lowering projections. I formally conceded that institutions could/can make leadership changes as they deem necessary-but they cannot falsely accuse or misrepresent-which was the case in this instance. I will continue to work with you and support you in every way I can. As I have stated, I do enjoy working with you and want you to be successful."

40.    On January 21, 2020, Vivaldi made several disrespectful references in several emails that were derogatory and unprofessional to the Plaintiff. The Plaintiff challenged these statements by Vivaldi as again Vivaldi was attempting to bully and intimidate the Plaintiff. The Plaintiff recognized that Vivaldi was treating the Plaintiff differently than other similarly situated individuals at the university. The Plaintiff was being treated differently based on her race and age.

41.    In March of 2020, COVID-19 became prevalent and affected the operations of the University.

42.    The Plaintiff became aware of certain actions that she was required to take. Specifically, in response to the pandemic (COVID), local and state guidelines, and the actions of peer institutions concerning same, the SC extended campuses shut down on-site operations in March 2020 and staff effectively began working remotely (from home). Each staff member

ELECTRONICALLY FILED - 2023 Apr 27 9:19 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1002031

(McMaster, LaCubbert, Sneed, Grimes, DeRienzo) at the CHAR campus was assigned a laptop to ensure that they could adequate perform their job. Every effort was made to render certain that IT protocols were addressed. Regardless, a number of issues still presented challenges (i.e. access to CARS printers, etc.). As a consequence, staff with those direct responsibilities were compelled to work on site at the campus to complete specific/essential tasks.  According to the Travel time for Hourly (Non-Exempt) staff policy, excluding normal comminuting time, employees should be compensated for all travel unless 1) it is outside of regular work hours 2) it is on a common carrier or as a passenger 3) where no work is done.  The policy further states that whether time spent in travel is compensable time depends upon the kind of travel involved. First and foremost, the period for which the reimbursement was proposed/requested for the two Representatives (Sneed and Grimes) was during the COVID closed campus period. Their work site had been changed to 'home', and therefore, outside of what had been determined to be their regular work location. Beyond that, the employees felt it incumbent upon them to go to the campus to fulfill core responsibilities of their job(s):

Campus Operations – Retrieving the mail and addressing related issues

Academic Support – Running and printing CARS reports to assist the Core faculty and director with course management, registrations, weekly enrollment data, etc.

IT Support – Only the CARS designated printer could be used to run/print certain the above referenced reports.

While Debbie Grimes indicated that she did not feel it necessary to obtain reimbursement, Robin Sneed expressed on more than one occasion that, while the travel to campus was necessary, the expense was burdensome. For that reason, only Ms. Sneed's mileage was

ELECTRONICALLY FILED - 2023 Apr 27 9:19 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1002031

submitted. The request was denied by the finance office, however, the Plaintiff posits that it was reasonable and right to attempt to support the employees in this way, and justifiable, particularly when there is/are no universities policies that address those unique and short term COVID travel requirements.

With regard to an email concerning preparations for the pandemic, regarding of what may or may not have been stated that the Plaintiff does not recall, all mandates presented by university leadership were swiftly and fully enacted. In fact, as a direct result of the Plaintiffs leadership, the campus exceeded what was required to ensure compliance and safety:

•     Staff engaged on daily screenings (either via the system of using the printed questionnaire)

•     All Faculty and guests were screened prior to campus entry

•     Out of an abundance of caution, the campus was adequately stocked with Lysol Spry, hand sanitizer, wipes and masks

•     COVID regulations and guidelines were prominently posted and adhered to at all times

43.     During the Plaintiff's employment she was on campus consistently. The Plaintiff was not required to be on campus during certain hours. The campus did not operate nine to five. The Plaintiff consistently observed her work schedule the entire time of her employ, as a direct report of the former AVP Carol Adams and then as a direct report of Donovan Outten. The Plaintiff was never questioned about her schedule or asked to change her schedule. Due to the nature of the campus operations and courses being offered during the evenings, Mondays –Thursdays, the Plaintiff customarily arrived on campus mid-morning

ELECTRONICALLY FILED - 2023 Apr 27 9:19 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1002031

on Mondays and worked both early mornings and late evenings through Thursdays to ensure that she was on-site to provide direct assistance for the students and faculty at the most critical times. The hours worked by the Plaintiff each week typically far exceeded the expectations/requirements for exempt employees. Other employees who were Core-Faculty generally observed a more flexible schedule to fulfill advising and teaching responsibilities. Staff members maintained a 'normal' 8-5 schedule. Standard schedules were incorporated in ADP for all exempt staff at each of the campuses, for ease of verification, with the understanding that the hours would necessarily vary. This was a long standing practice at every SC campus with the understanding that, as stated in the attendance policy, the requirements of the job may (and generally does) dictates working beyond this core schedule. Prior to returning to the campus mid-pandemic, the Plaintiff had several (documented) discussions with the staff concerning protocols, all of which were implemented upon return to the campus. Furthermore, the Plaintiff was on site and supported/and assisted with all phases of campus preparations prior to the reopening. Specifically, the Plaintiff assisted the Representatives with classroom preps and cleaning and ensured that the campus was fully stocked with the necessary sanitizers and masks. During the pandemic off-site period, the Plaintiff held daily calls with the staff, primarily the Representatives (Sneed and Grimes) and the Core Faculty (McMaster and LaCubbert) when/as needed. On more than one occasion, the Plaintiff shared with her staff and the Interim Regional that her laptop was not working. For that reason, the Plaintiff used her smartphone to communicate and execute her responsibilities. Notably, the smart phone has the same capability had/has the same capabilities as the Plaintiff's laptop. Moreover, since

ELECTRONICALLY FILED - 2023 Apr 27 9:19 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1002031

her employment, the university has awarded the Plaintiff a cell phone allowance for the specific purpose using her personal cell phone in the performance of their job.

44.  After the start of the Pandemic, the staff in Charleston were still required to have staff meetings to address Operations in the University. The Plaintiff addressed the concerns of the staff due to the pandemic. The Plaintiff instituted that all staff meetings took place in the campus lobby, Staff meetings were only held during the day when no students or faculty were present, the campus and team were small so the space was conducive and made it possible for the Representatives (Rankin, Grimes, Sneed) to participate/contribute while remaining at their desk to answers campus calls, meetings were inclusive and rotated, some meetings were led by the director, some by the Core faculty, others by the Representatives; and all meeting encouraged open discussion and resolution if any issues arose.

45.  On January 15, 2021, the Plaintiff filed a formal complaint of discrimination with Human Resources. The Plaintiff's concerns regarding the work environment were significant. The Plaintiff felt she was being treated differently based on her race and age. The Plaintiff's complaint set forth the following:

*This is a formal complaint for discrimination that I have been subjected to, and my request that you fully review the allegations and take appropriate action to stop it or remedy it. The harasser's name is Beth Vivaldi. The following synopsis details the unwarranted, unwelcomed, unprofessional, inappropriate, micro-aggressive, discriminatory, and misogynistic statements made by the respondent:*
*In the email dated 10/16/2019 (Attachment A), I was characterized by the respondent as "very articulate" and "a stunning looking woman". Stating that I am "articulate" reveals that she was surprised at how "professional" or "well- spoken" I was, and conveyed her underlying assumption and bias that it is unusual for a person (of color like me) to be intelligent. Stating that I am "a stunning looking woman and that [that] always helps" was a sexist, misogynistic remark that presupposes that my appearance has possibly aided in some way in my professional rise and status. Beyond that, stating that she "would not hesitate to ask me to accompany her in any dealings with organization Presidents or State Approval Authorities" was even more disconcerting and caused a significant level of uncomfortableness. The context of these "compliments" makes them inappropriate. While some (perceived) compliments might be pure and not intend hard, some are of innuendos*

ELECTRONICALLY FILED - 2023 Apr 27 9:19 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1002031

*that have no place in the workplace and create unequal power dynamics. It is my belief that such is the case in this instance. In*

*this single email, the respondent's biases and prejudices are on display. What is more, she appeared to have no problem leveraging those preconceived attitudes to advance her own success.*

*In the email dated 1/21/2020 (Attachment B), I was referred to by the respondent as "Gal". Beyond the inappropriate level of casualness, it seems the respondent, who espouses to be a seasoned administrator, has little regard for the demeaning and derogatory origin and of the term. In this same email, she suggest that I could "go have a drink with her", which was equally disturbing and leading, whereas had the activity would have taken place during the course of the workday, which likely would have been in violation of university policy, and potentially a factor which could have been used to evaluate my performance and judgment, at a later time. Again, the entire content and context of this email was too familiar, void of boundaries, and inappropriate.*

*The above-referenced emails were crafted by the Respondent in the early stages of her current position. With that said, I strongly believe they shed light on her racial and gender biases and prejudices and foreshadow the intense dynamic that currently exist between her and her subordinates of color, and women, who resist or reject subjugating to those preconceived biases and prejudices.*

46. On February 2, 2021, Vivaldi sent a series of emails to her direct reports concerning working with the Technical colleges and undergraduates. The Plaintiff felt that Vivaldi was interfering with the Plaintiff's ability to perform her position as a direct result of the Plaintiff's complaints to Human Resources regarding differential treatment based on race and age.

47. On February 3, 2021, Prior emails were resent to Vivaldi concerning the CHAR campus' focus on graduate rather than undergraduate.

48. On February 3, 2021, Vivaldi responded to the emails and stated that the CHAR team going forward was to AGRESSIVELY make those connections to the respective Tech College Administrators, review and finalize all Transfer Equivalencies (TRs) for all 3 completer programs and to provide constant collaboration for all transfer or college events that they may have scheduled in the coming year. All former parties were copied, however, she added that she would be happy to discuss the matter further, but in confidence. Vivaldi's

ELECTRONICALLY FILED - 2023 Apr 27 9:19 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1002031

continued actions were an intentional action to create non-discriminatory reasons to discipline the Plaintiff later in retaliation for her complaints with Human Resources.

49.    The Plaintiff responded to this email with the CHAR team was fully aware of the charge and that we would continue to be responsive in that regard.  The Plaintiff attempted to cooperate in all ways with Vivaldi.  However, it was evident that Vivaldi was out to end the Plaintiff's employment due to her complaints.

50.    On February 4, 2021, Vivaldi made inquiries regarding the Plaintiff's weekly report that tracked campus enrollment activity.  The Plaintiff had created this weekly reporting document years prior.  Vivaldi requested that she be permitted to use the document.

51.    On February 5, 2021, Vivaldi sent a request to the Plaintiff and implied any failure to respond would be insubordination.  On February 5, 2021 the Plaintiff provided the information requested by Vivaldi.  The Plaintiff further informed Vivaldi that there were no acts of insubordination and if necessary she would address the issue with HR.  Vivaldi responded to the Plaintiff email that she considered her response to be a threat. The Plaintiff was shocked by Vivaldi's continuation of unprofessional and discriminatory treatment of her as an African American.  Vivaldi's actions were in direct retaliation for the Plaintiff's complaints regarding Vivaldi's prejudices against her and others with the University.

52.    On February 8, 2021, the Plaintiff was informed that HR needed to speak to her.  On February 10, 2021, the meeting was scheduled.  HR rescheduled the meeting for February 12, 2021.  During the zoom meeting the Plaintiff, and HR Business Partner Tonja Kirby, discussed the following:

"We discussed my practice of copying staff on emails. Tonja said she agreed that staff should not be copied. Emails should only be between me and my supervisor. I explained

ELECTRONICALLY FILED - 2023 Apr 27 9:19 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1002031

that I only copy those impacted by a responsibility.  We discussed my interactions with my supervisor. I informed Tonja that, heretofore, my evaluations had been favorable. She stated she had done her research and was aware of that. She added that she was aware that I had been demoted and that I was allowed to keep my salary. She stated that she wished someone would take away some of her job duties and let her keep her salary. Tonja stated that it seemed to be a case of "two strong willed/minded women". She said at that point, she (Tonja) was the only one who knew about the complaint and that it could basically be resolved between the three of us. Tonja reminded me that Beth is my supervisor, and it would be in my best interest to work things out. She said, that it would be in my best interest to do that so that other options would not have to be considered. When asked, I stated that I would be amenable to mediation. She said it would be just the three of us and that Beth and I would talk out our differences and move on. As discussions continued, I informed Tonja that I too had concerns in the past but did not raise them.  Specifically, I discussed an email that was concerning me where Beth referred to me as 'articulate' and 'attractive' in the context of my job responsibilities. Tonja asked why I did not raise those concerns sooner. I stated that I had hoped that over time I could mitigate the concerns. Her response was that 'people always think that - they need to act first'.  She said stated I should have addressed my concerns first, because it now appears that am on the defensive. Tonja said if I could find that/those emails I should file a complaint as well. When I responded that I wasn't sure if I could find them, she stated that she would send me the link to file the grievance and that I needed only search for the word 'attractive' to locate the emails. When I located the emails later that evening and shared them with Tonja, she asked that I not send

ELECTRONICALLY FILED - 2023 Apr 27 9:19 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1002031

the emails to her and that I complete and attached documents to the complaint form. I did as advised."

53.    On February 15, 2021, the Plaintiff submitted a formal complaint through the Webster Human Resources Incident Report Form regarding Vivaldi creating a hostile work environment and discriminating against the Plaintiff. The Plaintiff was well aware that this was not "two strong willed/minded women" as stated by Human Resources Representative Kirby but was retaliation and discrimination. The Plaintiff was performing her position as set forth in her job description and the Defendant was creating non-discriminatory articulated reasons to discipline her in order to overcome the Plaintiff's justified complaints regarding age and race discrimination.

54.    In February of 2021, Tonja Kirby informed the Plaintiff that she was a danger to the university and the university needed to minimize its risks. Kirby further accused the Plaintiff of not working and stated that the University did not have the money to be paying people that do not work. Kirby further accused the Plaintiff of creating a hostile work environment. None of these issues had ever been mentioned in the Plaintiff's evaluations. The actions of Kirby defamed the Plaintiff. Kirby's statements were intentionally false and presented in order to create a non-discriminatory articulated reason for the Plaintiff's termination. The alleged actions by Kirby and Vivaldi never occurred.

55.    On February 18, 2021, the Plaintiff was informed by Tonja Kirby, that "Human Resources will have to put your case on hold until we can get an open investigator. I accidentally sent your letter from our system Maxient yesterday and indicating that Kimberley Pert would be handling your case. As you will remember when we spoke I explained to you that HR has two investigators that handles HR cases me and Kimberley. So, this is not considered

ELECTRONICALLY FILED - 2023 Apr 27 9:19 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1002031

a Title IX case but a HR case. I just wanted to clarify that with you. Kimberley's case load is full as is mine and when we have an open investigatory to handle your case we will start the review process, which I'm sure will be shortly."

56. On February 23, 2021, the Plaintiff had another zoom meeting. Tonja Kirby informed the Plaintiff that she had lost all of her notes and had to recreate them. Kirby again made several allegations against the Plaintiff regarding her performance. Kirby's admissions were typical of the University and its failure to handle the Plaintiff's complaints professionally, according to the Policies and procedures of the University and evidence of their failure to fail to correct outrageous behavior. The focus of the meeting was the Plaintiff's performance leadership and staff concerns. Kirby accused the Plaintiff of not attending meetings, not answering the calls of her supervisors, Vivaldi and Outten, accused the Plaintiff of not running her campus, accused her of not working during COVID and that she threatened her staff. Kirby continued this beratement of the Plaintiff on February 24, 2021 and stated that all of her staff said the workplace was hostile. The Plaintiff was treated this way in retaliation for her complaints regarding discrimination and harassment.

57. On March 1, 2021, the Plaintiff was informed that she was on Administrative Leave for the company to conduct an investigation into a complaint made against her. The Defendant failed and refused to conduct an investigation into the Plaintiff's complaint that was made in January 2021. The Plaintiff's administrative leave was in direct retaliation or her complaints regarding race and age discrimination, rampant retaliation and hostile work environment.

ELECTRONICALLY FILED - 2023 Apr 27 9:19 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1002031

58.   On March 2, Outten sent an email to the Plaintiff's staff informing them that she was on administrative leave and that they would report to Beth Vivaldi. Sarah Hull, who was no longer a full-time employee or a direct report of the Plaintiff, was also copied.

59.   On March 3, 2021, the Plaintiff's attorneys contacted Webster University, Julian Z Schuster, President of Webster University, to attempt to head off the retaliation that seemed to be inevitably to take place.  The Plaintiff's attempts failed due to the University's perception that the Plaintiff was a "danger" to the University based on Kirby and Vivaldi's false representations in retaliation for the Plaintiff's complaints.

60.   On March 15, 2021, the Defendant issued an Outcome Report regarding the 7 different alleged claims against the Plaintiff.  The Report addressed the Plaintiff's complaint of discrimination, hostile work environment and unprofessional behavior of Vivaldi in one paragraph of 6 lines and merely stated that they conducted a sperate investigation and the conclusion was there was no finding of wrongdoing.  The Letter was merely signed by Human Resources.

61.   That the Plaintiff was terminated on March 15, 2021.  The Plaintiff was informed that she was terminated from her employment relationship due to violations of policies.  The Defendant's reasons for termination were pretextual.  The Defendant failed and refused to conduct a thorough investigation by failing to interview all employees and staff.  Dr. Julie LaCubbert, who has worked with the Plaintiff at the CHAR campus for approximately three years verified that she was not contacted by HR and that she 'would never have made those statements because that is not how she feels".  In fact, Dr. LaCubbert texted the Plaintiff on 3/17/2021 when she learned of the Plaintiff's departure and stated that "she greatly enjoyed working with her over the years at Webster and thanked her for her support

24

ELECTRONICALLY FILED - 2023 Apr 27 9:19 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1002031

and guidance". Likewise, the Plaintiff received a text from Dr. McMaster on 3/18/2021 "thanking her for all she (the Plaintiff) did for her while at WU". Other (unsolicited or coerced) examples which displayed the positive sentiments of the staff concerning the Plaintiff included the when Director/Plaintiff and her staff members Robin Sneed and Colonel Royce Fudge, Ret. (former Joint Base liaison) met with University Trustee and Military Advisor, Brigadier General Scott Weustoff, Ret. at the campus in Spring 2020. The purpose of the meeting was to discuss the transitions which occurred at the Joint Base Charleston and Beaufort locations. At the close of the meeting, Colonel Fudge stated that the Director/Plaintiff was the 'best boss he had ever had - military or civilian". Robin Sneed agreed"; the resignation letter from Robin Sneed dated 11/19,2021, in which she stated that "it had been a pleasure working with this {CHAR} team, and an email sent to the SC Interim Regional Director from Representative Jacquetta Green on February 16, 2021, in which Ms. Greens stated that "she is happy with the new environment and having a supportive team...it's a huge difference and I'm glad for it".

62.    The Plaintiff was also informed that her claims against Vivaldi were unsubstantiated.

63.    On March 23, 2021, the Plaintiff attempted to invoke her right to a grievance.   The Defendant denied the request and refused to allow the Plaintiff to file a grievance.  Despite the refusal the Plaintiff presented a rebuttal to the Report.

64.    The Plaintiff specifically addressed that the actions were not committed by her but another employee.  Specifically, Sarah Hull was the harasser in the department.

The Plaintiff specifically addressed the following in her response:

- On more than one occasion the Director/Plaintiff was approached by staff concerning the inappropriate behavior and hostile of Core Faculty Sarah Hull, who was arguably the same FTE referenced in the Outcome Report.

ELECTRONICALLY FILED - 2023 Apr 27 9:19 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1002031

- Cheryl Rankin, Robin Sneed, and Dr. McMaster expressed numerous concerns to the Plaintiff that Ms. Hull failed to do her job, would not see students, would call out when scheduled to work evenings, used profane language, and would have regular outburst of hostile behavior. They also shared that she (Sarah) would not do so when the Plaintiff was on campus – only when she, the Plaintiff was either off campus or could not hear the exchanges.

- A few days prior to the referenced meeting, the Plaintiff/Director went to work on a project with Robin Sneed in her office. When she approached Ms. Sneed, she found her visibly shaken, upset, and in tears. When asked what the problem was, Robin informed the Plaintiff/Director that Sara Hull had just been shouting obscenities at her in her doorway and stating that is was not her (Sarah's) job to perform a specific functions. Robin stated to the Plaintiff/Director that is was frightening and very disturbing. As a consequent, the Plaintiff/Director sent her Robin home and assured her that the matter would be addressed.

- A full staff meeting (Grimes, Sneed, Rankin, LaCubbert, McMaster, Hull, and the Plaintiff) was subsequently held (Classroom #2) in which campus climate and expectations staff interactions and expectations concerning same was discussed. All were provided an opportunity to share their concerns. Robin Sneed shared that she was upset by Ms. Hull and stated verbatim what Sarah has screamed at her. After several denials by Sarah, which Robin refuted, Sarah wept and apologized. It was agreed by all that the team would need to reassess and move forward in a more respectful and collaborative manner. The meeting ended amicably. However, following the meeting, Sarah asked to meet with the Plaintiff/Director. At that meeting, Sarah continued to weep and stated that she had a lot going on personally and that that and the job was just too much. She further stated that she needed to work on her coping skills. The Plaintiff/Director agreed with her and stated that she was a valuable member of the team. After stating several times that she had other stress that she was dealing with, Sarah stated that she was going to resign. The Plaintiff/Director implored her not to be reactionary and to give it more thought because she was a valued member of the team *(Notably, when hired as the CORE faculty, Sarah told the Plaintiff/Director she needed the job for healthcare. The Plaintiff/Director made it clear at that time that she was being hired for her expertise and no other reason)*. In any event, Sarah said she thought it was best. After that the Plaintiff/Director asked if she

ELECTRONICALLY FILED - 2023 Apr 27 9:19 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1002031

(Sarah) wanted to inform the team of her decision. She chose to do so and meet individually with each team member to inform them of her decision. Ironically, later that day, casual comments were made to the Plaintiff/Director by Cheryl Rankin, Robin Sneed, and Dr. McMaster that they hoped she (Plaintiff/Director) accepted the resignation and that the workplace would be improved by her departure. The Plaintiff/Director made it clear that it would be Sarah's decision and that she (the Plaintiff/Director) would support her (Sarah's) decision. Sarah proceeded with her resignation. A small going away celebration was held for her.

65.    During the Plaintiff employment she built Corporate Partnerships with MUSC, Santee Cooper, Palmetto Health, and Joint-Base Charleston, and was working on a third with Volvo when the Defendant terminated her from her employment.

66.    During the Plaintiff's employment, the Plaintiff suffered discrimination based on her race, age, retaliation for her complaints and hostile work environment in violation of the Defendants' policies and procedures and the law.

67.    That each of the reasons provided by the Defendant for not fixing the Plaintiff's work environment was meant to harass the Plaintiff, harm the Plaintiff, and retaliate against the Plaintiff.

68.    That Defendant wrongfully discriminated against the Plaintiff in violation of Title VII 42 U.S.C. 2000 and 42 U.S.C. 1981.

69.    That each of the reasons presented by the Defendant was pretextual. The Defendant has published a false narrative regarding the Plaintiff's employment in order to perpetuate a discriminatory hostile work environment that has led to severe emotional distress.

70.    Defendant's actions described herein were intentional and inflicted upon Plaintiff severe mental and emotional distress.

ELECTRONICALLY FILED - 2023 Apr 27 9:19 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1002031

71. As a result of Defendant's actions, Plaintiff has suffered irreparable injuries, including but not limited to loss of pay, benefits and other economic losses, emotional pain and suffering, mental anguish, humiliation, embarrassment, personal indignity, reputation, and other intangible injuries for all of which she should be compensated.

72. That the Defendant is the direct and proximate cause of injury to the Plaintiff.

73. That the Plaintiff was issued certain policies and procedures by the Defendant.

74. The Defendants violated the policies and procedures by failing to follow the actual policies in place against discrimination, hostile work environment and retaliation.

75. That as a result of Defendant's actions, Plaintiff has suffered irreparable injuries, including but not limited to loss of pay, benefits and other economic losses, emotional pain and suffering, mental anguish, humiliation, embarrassment, personal indignity and other intangible injuries for all of which she should be compensated.

76. Defendant engaged in policies and practices which willfully, intentionally, and unlawfully discriminated against Plaintiff on the basis of her race in violation of Title VII and 42 U.S.C. 1981.

77. That the Defendant, treated the Plaintiff significantly differently based on her race.

78. That the Plaintiff treated Caucasian coworkers more favorably.

79. That the Defendant's actions towards the Plaintiff violated the law.

80. That the Defendant is the direct and proximate cause of damage to the Plaintiff.

81. That, as a direct and proximate result of the Defendant's intentional unlawful actions towards the Plaintiff based on the Plaintiff's race, the Plaintiff:

    a.    suffered severe emotional distress;

    b.    suffered future lost wages and future lost benefits;

ELECTRONICALLY FILED - 2023 Apr 27 9:19 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1002031

    c.    suffered economic damages;

    d.    Loss of employment;

    e.    Loss of Future employment;

    f.    incurred attorney fees for this action;

    g.    incurred costs of this action; and

    h.    will incur future attorney fees and costs.

82.    That the Plaintiff is entitled to an award of damages in the amount of actual damages, compensatory damages, consequential damages, punitive damages, attorney's fees previous, future and present, costs of previous future and this action, and other damages such as this Honorable Court deems appropriate and just.

83.    That the Defendant evaluated the plaintiff differently based on her complaints.

84.    That the Plaintiff's employer discriminated against the Plaintiff based on her race complaints.

85.    That the Defendant is the proximate and direct cause of damage to the Plaintiff.

86.    Pursuant to 42 U.S.C. Section 1981A, Plaintiff also seeks compensatory damages including future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses.

87.    Pursuant to 42 U.S.C. Section 1981A, Plaintiff also seeks to recover punitive damages from Defendant for discriminating against Plaintiff with malice or with reckless indifference to Plaintiff's federal protected rights.

88.    Plaintiff seek all back pay and fringe benefits to which she is entitled under 29 U.S.C. Section 626(b), as well future damages and liquidated damages under the act.

ELECTRONICALLY FILED - 2023 Apr 27 9:19 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1002031

89. As Plaintiff is seeking damages under 42 U.S.C. 1981A and 29 U.S.C. Section 626(b) Plaintiff also demands a jury trial as to all claims properly tried to a jury pursuant to 42 U.S.C. Section 1981(A)(c)(1) and pursuant to 29 U.S.C. Section 626 (c)(2).

90. Pursuant to 42 U.S.C. Section 1988(c) and 42 U.S.C. Section 2000e-5(k), Plaintiff seeks her attorney's fees in bringing this action, including expert witness fees, and further seeks her costs associated with bringing this action pursuant to 28 U.S.C. 1920 of the Federal Rules of Civil Procedure, along with prejudgment and post-judgment interest pursuant to the law.

### FOR A FIRST CAUSE OF ACTION

### RETALIATION FOR COMPLAINTS REGARDING RACE DISCRIMINATION IN VIOLATION OF TITLE VII, 42 U.S.C. 1981 AND AGE DISCRIMINATION AGAINST WEBSTER UNIVERSITY

91. That Paragraphs one (1) through ninety (90) are hereby incorporated verbatim.

92. That the Plaintiff participated in a protected act when she reported racial discrimination, age discrimination, racial harassment, and hostile work environment.

93. The Plaintiff clearly reported the discrimination, harassment, and retaliation she was suffering on several occasions as documented above.

94. That the Defendants allowed the Plaintiff to be discriminated against based on her race and age in violation of the Defendants' own policies and procedures.

95. That the Plaintiff reported the discrimination. That the Defendant failed and refused to correct the behavior. That the behavior became worse after the Plaintiff's reports.

96. That the Defendant allowed the Plaintiff's supervisor to treat Caucasian employees more favorably without repercussions.

ELECTRONICALLY FILED - 2023 Apr 27 9:19 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1002031

97.    That the Plaintiff was terminated from her employment after her complaints.  That the Plaintiff was further subjected to worse behaviors after she complained to upper management.  The Plaintiff was clearly bullied as a result of being an African American and performing all aspects of her positions.

98.    That the reasons provided by the Defendants as the reasons for her termination were pretextual and created by others who discriminated against the Plaintiff.

99.    That the Defendants discriminated against the plaintiff based on her race and age.

100.    That the Defendants took adverse employment action against the Plaintiff by:

(a)    Failing to protect the Plaintiff from a Racially Hostile work environment;

(b)    Failing to protect the Plaintiff from Age Discrimination/hostile work environment; and

(b)    Refusing to enforce its own policies concerning discipline of employees engaging in harassing comments.

101.    That the Defendants subjected the Plaintiff to discrimination in violation of the law.

102.    That as a result of the Plaintiff's complaints the Plaintiff suffered retaliation for each of her complaints.

103.    As a result of the Plaintiff's complaints regarding discrimination based on her Race, Age, Retaliation, and hostile work environment based on her previous complaints the Defendant retaliated against the Plaintiff.

104.    The Defendant's actions described herein were intentional and inflicted upon Plaintiff to insure severe mental and emotional distress.

105.    As a result of Defendant's actions, Plaintiff has suffered irreparable injuries, including but not limited to loss of pay, benefits and other economic losses, emotional pain and suffering,

ELECTRONICALLY FILED - 2023 Apr 27 9:19 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1002031

mental anguish, humiliation, embarrassment, personal indignity, and other intangible injuries for all of which she should be compensated.

106.   That the Defendant is the direct and proximate cause of injury to the Plaintiff.

107.   That the Plaintiff is entitled to an award of damages from the Defendant. That the Plaintiff is entitled to recover damages from the Defendant in the amount of actual damages, consequential damages, punitive damages, reasonable attorney's fees, the costs of this action and all other damages available pursuant to Title VII and 42 U.S.C. 1981.

**FOR A SECOND CAUSE OF ACTION**
**RACE DISCRIMINATION AND HOSTILE WORK ENVIRONMENT COMPLAINTS**
**AGAINST**
**WEBSTER UNIVERSITY**

108.   That Paragraphs one (1) through one hundred and seven (107) are hereby incorporated verbatim.

109.   That the Plaintiff was an employee according to the law of the State of South Carolina, Federal Law including but not limited to Title VII and 42 U.S.C. 1981.

110.   The Defendants are employers within the applicable State and Federal Laws.

111.   The Plaintiff was subjected to differential treatment based on her race.

112.   The Plaintiff was not treated fairly or equally as other Caucasians.

113.   That the Plaintiff complained of discrimination based on her race.

114.   That as a result of the Plaintiff's complaints the Plaintiff suffered retaliation for each of her complaints.

115.   As a result of the Plaintiff's complaints regarding discrimination based on her Race, and hostile work environment based on her previous complaints the Defendant retaliated against the Plaintiff.

ELECTRONICALLY FILED - 2023 Apr 27 9:19 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1002031

116. The Defendant's actions described herein were intentional and inflicted upon Plaintiff to insure severe mental and emotional distress.

117. As a result of Defendant's actions, Plaintiff has suffered irreparable injuries, including but not limited to loss of pay, benefits and other economic losses, emotional pain and suffering, mental anguish, humiliation, embarrassment, personal indignity, and other intangible injuries for all of which she should be compensated.

118. That the Defendant is the direct and proximate cause of injury to the Plaintiff discriminating against her based on her race.

119. That the Plaintiff is entitled to an award of damages from the Defendant. That the Plaintiff is entitled to recover damages from the Defendant in the amount of actual damages, consequential damages, punitive damages, reasonable attorney's fees, the costs of this action and all other damages available pursuant to Title VII and 42 U.S.C. 1981.

## FOR A THIRD CAUSE OF ACTION
## HOSTILE WORK ENVIRONMENT
## AGAINST
## WEBSTER UNIVERSITY

120. That Paragraphs one (1) through one hundred and nineteen (119) are hereby incorporated verbatim.

121. That the Plaintiff was an employee of the Defendants.

122. That the Defendants are employers in accordance with Title VII, 42 U.S.C. 1981 and ADEA.

123. Each and every action taken by the Defendants' employees instituted a work environment that no reasonable person would subject themselves to.

124. That the Defendants subjected the Plaintiff to a hostile work environment.

33

ELECTRONICALLY FILED - 2023 Apr 27 9:19 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1002031

125.    That the Plaintiff's work environment was abusive, to the point of severe and pervasive.

126.    The Plaintiff was subjected to discrimination based on her Race and Age.

127.    That the Defendant failed and refused to address the situation.

128.    As set forth above the Plaintiff was harassed on a daily basis by her direct supervisor who intentionally and purposefully subjected to a severe and pervasive work environment.

129.    That the Plaintiff suffered severe emotional distress as a result of the Defendant's hostile work environment based on the Plaintiff's Race and Age.

130.    That the Plaintiff's severe emotional distress was foreseeable as a result of the severe and pervasive work environment that the Defendant subjected the Plaintiff.

131.    That the Plaintiff has been damaged as a result of the Defendant work environment.

132.    That the Defendant is the direct and proximate cause of damage to the Plaintiff.

## FOR A FOURTH CAUSE OF ACTION
## AGE DISCRIMINATION IN EMPLOYMENT ACT
## AGAINST
## WEBSTER

133.    That paragraphs one through one hundred thirty two (132)   are hereby incorporated verbatim.

134.    That the Plaintiff was subjected Age Discrimination while employed with the Defendant.

135.    That the Defendant, treated the Plaintiff significantly differently based on her age.  That younger individuals were permitted to commit much more agregious acts and were nto disciplined, suspended or terminated including but not limited to harassing other employees, failing to attend meetings, failing to keep appointments, failing to answer calls, etc.

34

ELECTRONICALLY FILED - 2023 Apr 27 9:19 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1002031

136.    That the Defendant, treated the Plaintiff significantly different than it treated younger employees.  That the Defendant did not discipline younger employees for actions that would have been terminable offesnses.

137.    That the Defendants' treatment of the Plaintiff was so hostile the Plaintiff was forced to report the work environment to HR.

138.    The Defendant threatened the Plaintiff with significant discipline in retaliation for her complaints regarding discrimination.

139.    That the Defendant's actions towards the Plaintiff violated the law.

140.    That the Defendant is the direct and proximate cause of damage to the Plaintiff.

141.    That, as a direct and proximate result of the Defendant's intentional unlawful actions towards the Plaintiff based on the Plaintiff's age, the Plaintiff:

    a.    suffered severe emotional distress;

    b.    suffered future lost wages and future lost benefits;

    c.    suffered economic damages;

    d.    Loss of employment;

    e.    Loss of Future employment;

    f.    incurred attorney fees for this action;

    g.    incurred costs of this action; and

    h.    will incur future attorney fees and costs.

142.    That the Plaintiff is entitled to an award of damages in the amount of actual damages, compensatory damages, consequential damages, punitive damages, attorney's fees previous, future and present, costs of previous future and this action, and other damages such as this Honorable Court deems appropriate and just.

ELECTRONICALLY FILED - 2023 Apr 27 9:19 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1002031

## PRAYER FOR RELIEF

WHEREFORE plaintiff prays that this Honorable Court:

A. Accept jurisdiction over this matter, including the pendent claim;

B. Empanel a jury to hear and decide all questions of fact;

C. Award the Plaintiff lost wages, future lost wages, lost benefits and future lost benefits;

D. Award to plaintiff compensatory and consequential damages against the defendant;

E. Award to plaintiff punitive damages against the defendant for their malicious and spiteful pattern of age and race discrimination;

F. Award to plaintiff All damages available to the plaintiff damages against the defendant for their malicious discrimination against the plaintiff in violation of the Title VII and 42 U.S.C. 1981;

G. Award to plaintiff the reasonable attorneys' fees and costs incurred in the prosecution of this matter;

H. Award all damages available to the Plaintiff pursuant to Federal and State Law;

I. Permanently enjoin the defendants, their assigns, successors, agents, employees and those acting in concert with them from engaging in sexual discrimination, disparate treatment or retaliation against plaintiff and

J. Enter any other order the interests of justice and equity require.

HUNT LAW LLC

*s/Bonnie Travaglio Hunt*
Bonnie Travaglio Hunt
HUNT LAW LLC
4000 Faber Place Drive, Suite 300
North Charleston SC 29405
Post Office Box 1845, Goose Creek, SC 29445
(843)553-8709


*s/Peter Kaufman*
Peter Kaufman
Kaufman Labor & Employment Solutions, LLC
SC Bar #100144
295 Seven Farms Dr. Ste C-267
Charleston, SC 29492
(843)513-6062
pkaufmanlaw@gmail.com

Dated: May 1, 2023

ELECTRONICALLY FILED - 2023 Apr 27 9:19 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1002031