UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Vivian R. Gallman-Derienzo, | ) | C/A No. 2:23-cv-2468-RMG-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Webster University, | ) | (as to Motion to Dismiss |
| | ) | Amended Complaint, ECF No. 23) |
| Defendant. | ) | |
| | ) | |

Plaintiff Vivian R. Gallman-Derienzo ("Gallman-Derienzo" or "Plaintiff") brings this action against her former employer, Webster University ("Webster" or "Defendant").[1] This matter is now before the court for consideration of Defendant's Motion to Dismiss Plaintiff's Amended Complaint. ECF No. 23. Plaintiff opposes the Motion, ECF No. 26; Defendant filed a Reply, ECF No. 27. Based on these filings, the applicable law, and the arguments presented to the court at a hearing concerning Defendant's now-moot request for dismissal or a more definite and certain statement as to Plaintiff's original Complaint, the undersigned now recommends Defendant's Motion to Dismiss the Amended Complaint pursuant to Rule 41 be denied and the Motion to Dismiss pursuant to Rule 12 be granted as discussed within.

I.      Procedural background

Plaintiff's original 142-paragraph Complaint, filed in state court and removed to this court, seemed to include claims of discrimination, hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, as amended; the Age Discrimination in Employment Act of 1974 ("ADEA"), 29 U.S.C. § 626, *et*

---

[1] This employment matter was referred to the undersigned for pretrial proceedings. *See* 28 U.S.C. § 636(b); Local Civ. Rule 73.02(B)(2) (D.S.C.). This Report and Recommendation ("Report") is submitted to the district judge as to Defendant's potentially dispositive motion to dismiss.

*seq.*; and 42 U.S.C. § 1981 ("Section 1981"). Compl., ECF No. 1-2. The initial Complaint included no attachments.[2] Pointing out the somewhat-convoluted nature of Plaintiff's original pleading, Defendant sought dismissal of the original Complaint, alleging Plaintiff's pleading had not complied with Federal Rule of Civil Procedure 8's pleading requirements nor had it stated a claim pursuant to Rule 12(b)(6). Def. Mot., ECF No. 6 (seeking dismissal for "failure to comply with Fed. R. Civ. P. 8 (a)(2) and 8(d)(1), and for failure to state a claim under Fed. R. Civ. P. 12(b)(6)"). In the alternative, Defendant sought the court's order requiring that Plaintiff make her Complaint more definite and certain, setting forth her "factual allegations and legal claims in a clear and concise manner." Def. Mem. in Support of Mot. Dism. 6, ECF No. 6-1. Plaintiff opposed that Motion. ECF No. 10 (including seven separate exhibits as attachments); Defendant filed a Reply, ECF No. 12. Upon review of the original Complaint, the undersigned scheduled a hearing in an attempt to obtain additional information from counsel, particularly including information as to what specific causes of action Plaintiff was pursuing and whether Defendant was seeking substantive dismissal of all of those causes of action. Conducted on October 4, 2023, the court obtained some clarification from Plaintiff's counsel as to the claims Plaintiff was seeking. Further, the court obtained clarification from defense counsel that, while Defendant sought dismissal of all claims based on pleading-based grounds, it was not seeking dismissal of Plaintiff's race-based retaliation claims on substantive grounds. After considering the parties' arguments, the court determined judicial economy would best be served by granting Defendant's alternative request for a more definite statement. The court gave Plaintiff until November 3,

---

[2] Plaintiff attached numerous documents to her brief in opposition to Defendant's Motion to Dismiss the original Complaint. However, as conceded by Plaintiff at the hearing on that Motion, those documents were not appropriately considered in analyzing the Complaint. *See* Order 3 n.3, ECF No. 19. Similarly, to the extent Plaintiff's opposition to the Motion to Dismiss the Amended Complaint refers back to the attachments to her earlier memorandum, those documents are not considered herein.

2023, to submit an Amended Complaint that took heed of matters discussed at the hearing and the additional specific guidance in the court's October 17, 2023 Order regarding same. ECF No. 19. Plaintiff filed her Amended Complaint on November 1, 2023. Am. Compl., ECF No. 21; ECF No. 21-1 (attachments to Am. Compl.: EEOC Charge signed by Plaintiff on March 26, 2021 and received by EEOC on that date;[3] EEOC Right to Sue Letter dated Feb. 27, 2023; and March 23, 2021 letter to defense counsel from Plaintiff's counsel attaching what is characterized as Plaintiff's "Formal Grievance, Outcome Report/Notification of Suspension and Termination," and "Respondent Response"). Rather than file an answer Defendant filed the Motion to Dismiss now under consideration.

II.    Factual background

The following facts are taken from the Amended Complaint and are construed in the light most favorable to Plaintiff, the nonmoving party.[4] Plaintiff, a 59-year-old African-American female, was hired by Defendant as the Regional Director for South Carolina Extended Campuses in 2013. Am. Compl. ¶¶ 33, 35. Plaintiff alleged her employment performance was exemplary, listing her overall ratings for her evaluations in 2015 through 2021. *Id.* ¶ 36. Plaintiff alleges that, as a result of Defendant's decision to changes its structure she was "demoted to Director of the Charleston Campus" on August 24, 2018. *Id.* ¶ 37. Although advised at the time the August 24, 2018 position-change "had nothing to do with her performance and the demotion would be in

---

[3] In the body of her Amended Complaint Plaintiff indicates she filed her "first charge of discrimination on November 23, 2021. Am. Compl. ¶ 18. As paragraph 18 goes on to quote verbatim the "particulars" of the Charge attached as "Exhibit A," it appears this is a reference to the EEOC Charge signed March 26, 2021 and attached to Amended Complaint at ECF No. 21-1 at 1-3.
[4] Detailed consideration of all of the voluminous facts in Plaintiff's Amended Complaint is not necessarily required for ruling on the pending Motion. Nonetheless, the undersigned includes this rather detailed factual summary for completeness.

title only[,]" Defendant later "alleged that the Plaintiff had refused to train new directors." *Id.* ¶¶ 39, 40. Plaintiff submits those allegations were false but were never investigated. *Id.* ¶ 41.

Plaintiff submits the allegations that Plaintiff was unwilling to train others was used as a "smoke screen to demote the Plaintiff" and promote a Caucasian. Am. Compl. ¶ 42. Many of Plaintiff's allegations appear to relate to Beth Vivaldi, a "younger Caucasian female" whom Defendant transferred on August 30, 2018, to become the Regional Director of South Carolina Extended Campuses. Having been placed in Plaintiff's former position, Vivaldi became Plaintiff's supervisor. Am. Compl. ¶¶ 43-44.

Plaintiff's pleading includes the following "examples" of accusations Vivaldi allegedly made against her in 2018 and 2019. These allegations are found in subparts (a) through (n) of paragraph 51:

- In November 2018 Vivaldi accused Plaintiff of failing to "produce reports and perform assignments" and "falsely accused the Plaintiff of having ill will towards administration and the university."

- In January 2019 Plaintiff alleges the following about Vivaldi:
    - Vivaldi used a group email to accuse Plaintiff of failing to respond to her questions. Plaintiff indicates she had responded.
    - Vivaldi regularly "called out the Plaintiff" in group emails but did not do so to others.
    - Vivaldi instructed Plaintiff to miss a meeting to attend other meetings; she did not instruct other Directors in this manner.
    - Vivaldi attempted to undermine Plaintiff by instructing clerical support to perform certain aspects of Plaintiff's job. Vivaldi did not "attempt to undermine the authority of any other directors" in this way.
- In February 2019 Plaintiff alleges the following:
    - Vivaldi accused Plaintiff of instructing employees to use their personal credit cards without investigation.
    - Vivaldi failed to conduct investigations relating to "accusations with the Plaintiff."
    - Vivaldi "properly investigate[d] allegations against other directors," yet refused to permit Plaintiff to "present a defense."
    - Vivaldi "treated the Plaintiff differently based on her race and her age."
    - Vivaldi "falsely accused the Plaintiff of failing to comply with a directive[,]" and failing to provide information that Plaintiff did not possess.

- In March 2019 Vivaldi was pushing directors to "get their numbers up. The Plaintiff's campus was without a recruiter for over a year at this time." Also in March 2019, Vivaldi presented a draft of a negative evaluation for Plaintiff. After Plaintiff protested Vivaldi changed the evaluation to a "meets evaluation."[5]
- In April 2019, Vivaldi requested IT-related information from Plaintiff; Plaintiff promptly responded. In response, Vivaldi sent questions back to Plaintiff "insinuating" Plaintiff was not doing her job. Vivaldi instructed Plaintiff to "revert documents back to the original format because she could not operate them." Vivaldi did not make similar inquiries or send similar instructions to directors at other locations.
- In an October 16, 2019 email to Plaintiff, Vivaldi stated to Plaintiff that she was "glad they had gotten past any thought of ill-intent." On October 16, 2019, Vivaldi informed Plaintiff in an email that she "[was] a stunning looking woman and that always helps. . .lol." Plaintiff indicated no other employees were "subjected to commentary such as this insinuating that the Plaintiff was successful because of her looks rather than her intelligence and hard work."
- On March 26, 2020, Vivaldi "accused the Plaintiff and her campus of operating in isolation. No such accusation was made to other directors or their campuses."

Am. Compl. ¶ 51. Plaintiff indicates she "challenged each and every accusation of Vivaldi listed above," noted none of these "accusations were formalized into discipline in 2018 and 2019," and indicated Vivaldi did not subject other directors to such allegations. Plaintiff alleges Vivaldi "singled out the Plaintiff based on her race and age." *Id.* ¶¶ 52-54.

Plaintiff indicates that on May 2, 2019, because of Defendant's "failure to respond to her inquiries regarding her demotion she requested a full investigation into the matter with a restoration of her reputation from Human Resources at Webster University." Am. Compl. ¶ 56. On May 6, 2019, Plaintiff continued to seek evidence of the reasons for her demotion but did not receive any such information. *Id.* ¶ 57.[6]

On May 7, 2019, Plaintiff received a draft negative evaluation from Vivaldi. Am. Compl. ¶ 58. Plaintiff avers that evaluation contained some false allegations and that no other directors were "subjected to the defamation that Vivaldi presented in the Plaintiff's evaluation." *Id.* ¶ 59.

---

[5] Elsewhere in the Amended Complaint Plaintiff avers Vivaldi presented her with a draft negative evaluation on May 7, 2019. *See* Am. Compl. ¶ 58.

[6] Details regarding this demotion are far from clear. Plaintiff does not reference any claimed demotion in arguing against dismissal.

Plaintiff further indicates that on May 9, 2019, Vivaldi changed the evaluation to "Meets in overall performance and removed the false information and commentary." *Id.* ¶ 60.

Plaintiff's pleading continues, "On May 19, 2019, the Plaintiff contacted Douglas Rau in Human Resources ("HR"), concerning Vivaldi's constant pressure. The Plaintiff specifically stated that the actions of Vivaldi could be retaliation." Am. Compl. ¶ 61. In a somewhat confusing sentence Plaintiff indicates, "On May 28, 2019, Human Resources [sic] the Plaintiff's concerns were not addressed. The Defendant further never established the evidence as to why she was demoted." Am. Compl. ¶ 62 (it is unclear what Plaintiff avers took place on May 28, 2019).

Plaintiff avers that after the complaints "regarding retaliation and investigation to [HR] the Plaintiff's issues with Vivaldi seemed to alleviate temporarily[,]" and she continued her duties and responsibilities throughout 2019. Am. Compl. ¶¶ 63, 64. Plaintiff indicates she received accolades for her performance in the fall of 2019. *Id.* ¶ 65.

In January 2020, however, Plaintiff says the "accolades ended" and Plaintiff "went back to being treated differently." Am. Compl. ¶ 66. On January 21, 2020, Vivaldi allegedly "made several disrespectful references in several emails that were derogatory and unprofessional to the Plaintiff." Am. Compl. ¶ 67. Plaintiff continued by stating Vivaldi had referred to her "as a Gal. The Plaintiff felt the terms [sic] was racist." *Id.* Further, "Vivaldi failed to maintain professionalism." *Id.*

Vivaldi again began questioning Plaintiff's performance. Plaintiff characterized this as "bullying and harassment as Vivaldi did not question other directors like she questioned the Plaintiff." Am. Compl. ¶ 68; *see also id.* ¶ 70 (averring Vivaldi was treating Plaintiff differently

from other similarly situated individuals "who were not in her protected categories of race and age").

Plaintiff then includes many paragraphs concerning operational changes and issues that began in March 2020 during the COVID-19 pandemic. *See* Am. Compl. ¶¶ 71-100. Included in this section of the pleading are various allegations related to the working relationship between Vivaldi and another employee, Laura McMaster (race and age unidentified), whom Plaintiff identified as "Core Faculty at Charleston Campus." *Id.* ¶ 75; *see id*. ¶¶ 84-91. Plaintiff also notes that, on July 2, 2020, McMaster sent an email to Vivaldi requesting that "they reach for a higher professionalism and ethical space and eliminate the bullying, harassment, [] and retaliation." *Id.* ¶ 97.

In June 2020 Vivaldi gave Plaintiff an evaluation that included an "overall meets expectations." Am. Compl. ¶ 94. Vivaldi characterized Plaintiff as demonstrating "positive oversight and leadership [] at the Charleston Campus." *Id.* ¶ 95.

Plaintiff developed the "Charleston Transition plan" that indicated, as of June 26, 2020, students' and staff's work would continue to be remote. Am. Compl. ¶ 96. Plaintiff also indicates that, on July 24, 2020, she edited "Vivaldi's transition plan." *Id.* ¶ 98.

Plaintiff avers that Vivaldi and Defendant did not accept Plaintiff's recommendation in replacing Robin Wiggs-Sneed, who apparently was someone who had worked with Plaintiff. Rather, Plaintiff alleges Vivaldi was "undermining" Plaintiff by choosing someone named "Green," whose job in Columbia had been displaced. Am. Compl. ¶¶ 101-04. Plaintiff indicated Green's "qualifications were not the same as Robin[] Wiggs-Sneed but the plaintiff was happy to

have a person in the position." She requested that Green's salary be increased because her job duties had increased. *Id.* ¶¶ 104-05.[7]

Plaintiff then indicates she "addressed her concerns regarding her position with Sherriel Byrd and the fact that the Plaintiff was being taken advantage of and treated badly by Vivaldi." Am. Compl. ¶ 106 (no specific date given; no information regarding who Byrd is).

Plaintiff avers that, as of January 5, 2021, she had "still not received her replacement for Wiggs-Sneed and it was affecting the effectiveness of the Charleston Campus." Am. Compl. ¶ 107.

On January 14, 2021, Plaintiff avers Defendant Webster "or Dr. Outten, Vivaldi's supervisor" determined there would be no salary increase because "they were strapped for cash[.]" Am. Compl. ¶ 108 (not specifying whether the lack of a salary-increase applied to specific persons or to all persons).

On January 15, 2021, Plaintiff states she and the "Columbia Director were accused [by Vivaldi] of leaving other campuses out of the loop" and for "discussing things amongst themselves and failing to include others." Am. Compl. ¶ 109. Plaintiff "informed Vivaldi's accusations bordered on conspiracy thinking and that the conversation was just a consequence of another conversation regarding student enrollment." *Id.* ¶ 109(a) (not indicating specifically to whom Plaintiff made her comments). Vivaldi accused Plaintiff of being "absurd." Plaintiff responded that it was "no more absurd" than Vivaldi's accusation. *Id.* ¶ 109(b), (c).

On January 15, 2021, Plaintiff filed a complaint with Defendant's HR Department in which she "complained about Vivaldi's actions over the last year and her actions toward herself and Dr. McMaster." Am. Compl. ¶ 110.[8]

---

[7] Elsewhere in the Amended Complaint Plaintiff indicates Green was placed in the position on January 19, 2021. Am. Compl. ¶ 111.

Although not discussed in specific detail in the body of the Amended Complaint, the January 15, 2021 "Grievance" is found at ECF No. 21-2 at 3. To summarize, Plaintiff submits a "formal complaint for discrimination that [she has] been subjected to" and requests that the matter be reviewed. Plaintiff indicates the "harasser's name is Beth Vivaldi." Plaintiff then provides a synopsis the following statements of Vivaldi, which Plaintiff characterizes as "unwarranted, unwelcomed, unprofessional, inappropriate, micro-aggressive, discriminatory, and misogynistic[,]" ECF No. 21-2 at 3:

> o    An October 16, 2019 email in which Vivaldi characterized Plaintiff as "very articulate" and "a stunning looking woman and that always helps." Plaintiff characterized these as "sexist, misogynistic" remarks. *Id.* (although the attachment indicates the emails are also included as attachments, they are not included as part of the Amended Complaint).
> o    A January 21, 2020 email in which Vivaldi was inappropriately casual with Plaintiff, calling her "Gal" and suggesting they have a drink together. *Id.* Plaintiff indicates the "entire content and context of this email was too familiar, void of boundaries, and inappropriate." *Id.* (email not attached).

Plaintiff's internal complaint concluded, "I strongly believe" these comments "shed light on [Vivaldi's] racial and gender biases and prejudices and foreshadow the intense dynamic that currently exist [sic] between [Vivaldi] and her subordinates of color, and women, who resist or reject subjugating to those preconceived biases and prejudices." *Id.*

Plaintiff indicates that Jacquetta Green was offered the "position of Representative at the Charleston Metropolitan." Am. Compl. ¶ 111. In response to Vivaldi's January 20, 2021 congratulations to Plaintiff on "her selection," (apparently referring to Green), Plaintiff "protested the transfer as it was not a selection," and she found it important to be accurate that

---

[8] Although not discussed more fully in the body of Plaintiff's pleading, it appears the January 15, 2021 "Grievance" or "complaint" is attached as an exhibit to the Amended Complaint. *See* ECF No. 21-2 (letter from Plaintiff's counsel to Defendant's Chief HR Officer including copy of a "Formal Grievance Request," to which a "1/15/2021 Grievance, Outcome Report/Notification of Suspension and Termination, and Respondent Response" are attached. *See* ECF No. 21-2 at 1-21. The January 15, 2021 "Grievance" is found at ECF No. 21-2 at 3.

Plaintiff had played no part in that transfer. Plaintiff indicated she was pleased the position had been filled and noted "the individual would be joining her team no matter the terms." *Id.*

On February 1, 2021, Vivaldi "accused the plaintiff of failing to follow a directive." Am. Compl. ¶ 113. Plaintiff indicates she had provided the information to Vivaldi by email. *Id.* ¶ 114. Plaintiff states she was "fearful of Vivaldi at this time due to her pending complaint and the issues that Vivaldi had with Dr. McMaster." *Id.* ¶ 115.

On February 2, 2021 Vivaldi "sent a series of emails to her direct reports concerning working with the Technical Colleges and undergraduates which was a requirement of the Plaintiff's position." Am. Compl. ¶ 116. Plaintiff avers Vivaldi was "interfering with the Plaintiff's ability to perform her position" and causing it to appear to Plaintiff's subordinates that Plaintiff was not performing all of her job duties. Plaintiff indicates Vivaldi was "not treating other directors and their subordinates to these emails." *Id.* ¶ 117. Plaintiff avers Vivaldi's actions interfering with her performance was a "direct result" of Plaintiff's complaints to HR regarding "differential treatment based on race and age." *Id.* ¶ 118.

On February 3, 2021 emails were sent to Vivaldi (apparently by Plaintiff, although that is unclear) concerning the "CHAR campus' focus on graduate rather than undergraduate matters[.]" Am. Compl. ¶ 119. Vivaldi responded to those emails the same day, indicating the CHAR team "was to AGGRESSIVELY make those connections to the respective Tech College Administrators," and provide "constant collaboration for all transfer or college events that they may have scheduled in the coming year." *Id.* ¶ 120.

Plaintiff avers these "continued actions" of Vivaldi were an "intentional action to create non-discriminatory reasons to discipline the Plaintiff later in retaliation for her complaints with [HR]." Am. Compl. ¶ 121.

On February 5, 2021, Vivaldi sent Plaintiff a request (for information not specified in the Amended Complaint) and "implied any failure would be insubordination." Am. Compl. ¶ 122. Plaintiff provided the requested information, advised Vivaldi that there had been no insubordination, and indicated she would "address the issue with HR" if necessary. *Id.* ¶¶ 123-24. Vivaldi characterized Plaintiff's response as a threat. *Id.* ¶ 125. Plaintiff avers "Vivaldi's continuation of unprofessional and discriminatory treatment of the Plaintiff as an African American was unacceptable." *Id.* ¶ 126. Plaintiff characterizes Vivaldi's actions as "direct retaliation" for Plaintiff's "complaints against Vivaldi's prejudices against her and others with the University." *Id.*

On February 8, 2021, Plaintiff was advised HR needed to speak with her and a meeting had been scheduled for February 10, 2021. Am. Compl. ¶ 127. The meeting with HR actually took place on February 12, 2021. *Id.* ¶ 128. Plaintiff indicates that she "addressed her concerns that were first raised January 15, 2021." *Id.* ¶ 129. During the February 12, 2021 meeting Plaintiff informed HR's Tonja Kirby "that she felt she was being treated differently and that she was being discriminated against based on her race and age." *Id.* ¶ 130. Plaintiff provided several documents to HR in support of her "complaints of discrimination." *Id.* ¶ 131.[9] Plaintiff indicates Kirby advised Plaintiff she needed to file a formal complaint of discrimination; Kirby provided Plaintiff with the form to file. *Id.* ¶ 132. Plaintiff stated Kirby's "only response to the Plaintiff's concerns was that it was not based on race and/or age but that they were 'two strong willed/minded women.'" *Id.* ¶ 133. Kirby told Plaintiff it "would be in her best interests to work things out." *Id.* ¶ 134. Plaintiff indicated she "took this instruction as a failure to support her in her complaints and refusal to investigate by Kirby." *Id.* ¶ 135. Plaintiff characterizes HR's

---

[9] No documents Plaintiff purportedly provided on February 12, 2021 are attached to the Amended Complaint, nor are they more fully discussed in the pleading.

actions as "inappropriate," indicating they "further perpetrated the hostile work environment against the Plaintiff." *Id.* ¶ 136.

On February 15, 2021 Plaintiff submitted a formal complaint through the Webster Human Resources Incident Report Form "regarding Vivaldi creating a hostile work environment and discriminating against the Plaintiff." Am. Compl. ¶ 138.[10]

After Kirby received Plaintiff's complaint on February 12 and 15, 2021, Kirby advised Plaintiff that "she was a danger to the university and the university needed to minimize its risks." Am. Compl. ¶ 139. Kirby accused Plaintiff of "not working," and said the University could not pay people who did not work. Kirby also "accused Plaintiff of creating a hostile work environment." *Id.* Plaintiff avers that neither of these accusations had ever been made to Plaintiff before and they were "intentionally false and presented in order to create a non-discriminatory articulated reason for the Plaintiff's termination." *Id.* Plaintiff indicates the "alleged actions by Kirby and Vivaldi never occurred." *Id.* (not specifying what "alleged actions").

Plaintiff avers she was "subjected to a retaliatory hostile work environment in retaliation for her complaints." Am. Compl. ¶ 140. Plaintiff indicates that, on February 17, 2021, Plaintiff was told she had to send "Access Request Approvals" to Vivaldi each day. Plaintiff indicates other employees were not so required and the requirement was "to treat the Plaintiff differently for her complaints, create a hostile work environment" and was also "in retaliation." *Id.* ¶ 141.

On February 18, 2021, Plaintiff emailed Kirby indicating she wanted to change her HR complaint form to include other discriminatory acts; however, Plaintiff was not able to access the document." Am. Compl. ¶ 142. Also on February 18, 2021, Kirby advised Plaintiff that HR was putting her case "on hold" until there was an open investigator. *Id.* ¶ 143. Plaintiff characterizes

---

[10] The Amended Complaint does not include a copy of a February 15, 2021 formal complaint or an "Incident Report Form," nor does it provide additional detail of the content of such.

this second delay in investigating her January 15, 2021 complaints as "intentional" and stated they "further perpetuated the retaliation and retaliatory hostile work environment." *Id.* ¶ 144.

On February 23, 2021 Plaintiff and Kirby had another Zoom meeting in which Kirby advised she had lost her prior notes and made several negative performance-related allegations against Plaintiff. Am. Compl. ¶¶ 145-46. Plaintiff characterizes Kirby's actions as "further discriminatory, retaliatory, and perpetuating a hostile work environment." *Id.* ¶ 147.

On February 25, 2021, Plaintiff alleges Vivaldi interfered with Plaintiff's position by sending an email to FDTC ("FDTC" not defined; possibly "Florence Darlington Technical College"). This had been an action Plaintiff had been instructed to do and was in the process of doing. Am. Compl. ¶¶ 150-51. Plaintiff avers this was intentional and done to make it appear Plaintiff was failing to perform her job. She claimed this was part of a retaliatory hostile work environment and had not happened to other directors. *Id.* ¶¶ 153-53.

On March 1, 2021, Plaintiff was advised by telephone that she had been placed on administrative leave for Defendant to investigate a complaint made against her. Am. Compl. ¶ 154. Plaintiff characterizes her being placed on leave as retaliation for her complaints about Vivaldi; further, Plaintiff indicates the act was "discrimination, harassment of others and herself, hostile work environment and retaliation." *Id.* Vivaldi, a Caucasian, was not suspended. *Id.* ¶ 155-56. Defendant did not investigate Plaintiff's January 2021 complaint. *Id.* ¶ 157.

On March 2, 2021, "Outten" (previously referenced as Vivaldi's superior) sent an email to Plaintiff's staff advising them that Plaintiff was on administrative leave and they should report directly to Vivaldi. Am. Compl. ¶ 158.[11]

---

[11] Plaintiff indicates Sarah Hull, the individual "responsible for the issues that the Plaintiff was accused of" was copied on the March 2 email although she was no longer part of the Charleston staff. Am. Compl. ¶ 158. Plaintiff does not explain the significance of this.

On March 3, 2021, Plaintiff's counsel contacted Defendant's President "to attempt to head off the retaliation that seemed to be inevitably to take place." Am. Compl. ¶ 159. These attempts failed. *Id.* ¶ 160. *See* ECF No. 21-1 at 1-21 (letter and attachments Plaintiff's counsel sent to Defendant).

On March 15, 2021, Defendant issued an "Outcome Report" regarding the investigation of the "7 different alleged claims against the Plaintiff." Am. Compl. ¶ 161.[12] Plaintiff notes the Outcome Report also briefly mentioned her complaint of "discrimination, hostile work environment and unprofessional behavior by Vivaldi" in one short paragraph, indicating Defendant had conducted a separate investigation and found no wrongdoing. *Id.*

Plaintiff was terminated on March 15, 2021, "due to violations of policies." Am. Compl. ¶ 163. Plaintiff alleges the reasons were pretextual and not arrived at based on a thorough investigation. *Id.* ¶¶ 164-65.

On March 23, 2021, Plaintiff "attempted to invoke her right to a grievance[,]" but Defendant denied her request. Am. Compl. ¶ 167. Plaintiff submitted a rebuttal to the Report anyway. *Id.*; *see also* ECF No. 21-2 at 9-21 (Plaintiff's rebuttal). Plaintiff's pleading includes a summary of her rebuttal. Am. Compl. ¶ 167(a) through (f). Plaintiff asserts the actions [presumably, the actions attributed to her in the Report] had been committed not by Plaintiff but by Sarah Hull, whom Plaintiff alleges was "the harasser in the department." *Id.* ¶ 167(a). Plaintiff includes details of concerns regarding Hull's behavior. Plaintiff indicated that, after complaints about Hull Plaintiff had sent her home. After Hull "admitted to her actions," Hull "resigned but

---

[12] The letter from Plaintiff's counsel that is attached to the Amended Complaint includes as exhibits both the "Outcome Report," ECF No. 21-2 at 4-8, and Plaintiff's Response to same, *id.* at 9-21.

remained employed as faculty at the Charleston campus." *Id.* ¶ 167(b) through (f). Plaintiff alleges Hull remains an employee and faculty member. *Id.* ¶ 168.

Plaintiff submits she was discriminated against based on her "race, age, retaliation for her complaints and hostile work environment" in violation of the law and of Defendant's policies and procedures. Am. Compl. ¶ 170. Plaintiff alleges she was replaced by a Caucasian Male. Am. Compl. ¶ 175. She avers she was treated differently based on her race and Caucasian coworkers were treated more favorably. *Id.* ¶¶ 182-83.

Plaintiff submitted a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on March 26, 2021. Am. Compl. ¶¶ 17-18 (listing particulars of Charge); EEOC Charge, ECF No. 21-1 at 1-3.[13] The EEOC issued a "Notice of Right to Sue" dated February 27, 2023, *id.* at 4; Plaintiff filed her Complaint in the Charleston County Court of Common Pleas on April 27, 2023. It was removed to this court on June 5, 2023. ECF No. 1. The Amended Complaint was filed November 1, 2023.

III.    Defendant's request for dismissal pursuant to Federal Rule of Civil Procedure 41(b)

In addition to seeking dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant's motion also seeks dismissal pursuant to Rule 8 and Rule 41(b) based on Plaintiff's failure to follow the court's instruction that she "'separately delineate her causes of action and the averments she believes support each cause of action.'" Def. Mem. 2, ECF No. 23-1 (quoting Oct. 17, 2023 Order 6, ECF No. 19).

To be sure, the court shares Defendant's apparent frustration with Plaintiff's failure specifically to comply with portions of the October 17, 2023 Order. Nonetheless, the

---

[13] Although the Complaint indicates the Charge was filed on November 23, 2021, a copy of the Charge indicates it is dated March 26, 2021 and was received by the EEOC on that date.

undersigned is of the opinion that the drastic[14] sanction of outright dismissal of the Amended Complaint on that ground would not serve judicial economy. The request for Rule 41(b) dismissal should be denied. Rather, the court now considers the substantive Rule 12(b)(6) challenges Defendant raises to Plaintiff's Amended Complaint.[15]

IV.    Defendant's Motion to Dismiss pursuant to Rule 8 and Rule 12(b)(6)

       A.    Standard of Review

       Defendant seeks dismissal, arguing Plaintiff has not complied with Federal Rule of Civil Procedure 8 and Rule 12(b)(6). "A motion filed under Rule 12(b)(6) challenges the legal sufficiency of a complaint." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). The court measures the legal sufficiency by determining whether the complaint meets the Rule 8 standards for a pleading. *Id.* The Supreme Court considered the issue of well-pleaded allegations, explaining the interplay between Rule 8(a) and Rule 12(b)(6) in *Bell Atlantic Corp. v. Twombly*:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level . . .

550 U.S. 544, 555 (2007) (internal citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

---

[14] *See Davis v. Williams*, 588 F.2d 69, 71 (4th Cir. 1978) (including the "existence of less drastic sanctions other than dismissal" as part of the analysis in considering whether to dismiss a pleading pursuant to Rule 41(b)).

[15] This is not to say that the court will not reiterate guidance from its October 2023 Order in which it gave Plaintiff another opportunity to correct potential pleading deficiencies in determining whether the now-amended pleading can pass muster.

alleged." (citing *Twombly*, 550 U.S. at 556)). Rule 8(d)(1) further clarifies that each allegation in a pleading should be "simple, concise, and direct." Fed. R. Civ. P. 8(d)(1); *see Twombly*, 550 U.S. at 555 (noting that the Rule requires only a "short and plain statement of the claim showing that the pleader is entitled to relief" and giving the "defendant fair notice of" the claim and its grounds (internal quotation marks omitted)). When determining whether a complaint comports with the requirements of Rule 8, courts look to a variety of factors, including the length and complexity of the complaint, whether the complaint is sufficiently clear to allow the defendant to defend himself, and whether the plaintiff had the benefit of counsel. *See Sewraz v. Long,* 407 F. App'x 718, 718–19 (4th Cir. 2011) (unpublished). When considering a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). The court is also to "'draw all reasonable inferences in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus. Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (quoting *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009)). As the Fourth Circuit recently noted, while facts must be taken as true, the test at the Rule 12(b)(6) stage "is not legally myopic. Rather, it must be applied with common sense to determine whether a complaint contains the 'sufficient factual matter, accepted as true, to state a claim to relief *that is plausible on its face*,' not merely conceivable." *Tabb v. Bd. of Educ. of Durham Pub. Sch.*, 29 F.4th 148 (4th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 678) (emphasis added in *Tabb*)). Further, although a court must accept all *facts* alleged in the complaint as true, this is inapplicable to legal conclusions, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678 (citation omitted). While legal conclusions can provide the framework of a complaint, factual allegations must support the complaint for it to survive a motion to dismiss. *Id.* at 679. Therefore, a pleading

that provides only "labels and conclusions" or "naked assertion[s]" lacking "some further factual enhancement" will not satisfy the requisite pleading standard. *Twombly,* 550 U.S. at 555, 557. Further, the court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs., Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). At bottom, the court is mindful that a complaint "need only give the defendant fair notice of what the claim is and the grounds upon which it rests." *Coleman v. Md. Ct. of Apps.,* 626 F.3d 187, 190 (4th Cir. 2010) (internal quotation marks omitted).[16]

B.    Analysis

As an initial matter, the court shares Defendant's frustration with Plaintiff's Amended Complaint in that it does not heed instructions provided in the court's October 17, 2023 Order. In particular, Plaintiff's failure to set out separate causes of action and the elements to support each makes analysis of the pleading more difficult. As the court stated in October 2023,

> [] Plaintiff's allegations and causes of action should contain factual allegations that set forth plausible claims for relief. In pleading her separate causes of action Plaintiff should keep in mind the proof necessary to establish each cause of action. *While the legal requirements of each cause of action need not be reiterated at this juncture*, the court notes the discussion at the hearing that Plaintiff must adequately plead specific facts that relate to claimed alleged wrong and tie them to conduct protected by the applicable statutes. Plaintiff is particularly reminded that any claim brought pursuant to 42 U.S.C. § 1981 requires that Plaintiff plausibly plead facts from which it could be determined Plaintiff would not have suffered discrimination but for her race. *E.g., Comcast v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020). In other words, as discussed at the hearing, Plaintiff is to set out separate causes of action in which she explains what relief is sought and on what grounds.

Order 5-6, ECF No. 19 (emphasis added). In the italicized language the undersigned was advising Plaintiff that *the court* did not need to reiterate the legal requirements of each of Plaintiff's causes of action in its October 2023 Order. Plaintiff now cites that language to suggest

---

[16] Although Plaintiff's opposition also cites the Rule 12(c) standard of review for a motion for judgment on the pleadings, Pl. Mem. 8 n.11, ECF No. 26, Defendant's Motion is filed pursuant to Rule 12(b)(6).

the court was advising Plaintiff that she was not required to plead the legal requirements of each cause of action but was "required to support each." Pl. Mem. 10. Plaintiff seems to suggest that her now separated factual allegations (all 195 of them) has done this. Even accepting Plaintiff's interpretation that she was not required to set out the "legal requirements" of each cause of action (a difficult interpretation to accept given the clear black-letter law), Plaintiff still has not set out factual allegations in a manner that makes it clear which facts she believes supports which cause(s) of action. Instead, Plaintiff would have the court and Defendant ferret through the numerous allegations and divine what factual allegations support the elements of which pleaded claims. This is an especially difficult task when Plaintiff continues to plead compound causes of action.

Nonetheless, as noted above, judicial economy militates that the court consider the relative merits of the Amended Complaint in light of Defendant's Rule 12(b)(6) challenges to it. To that end, the following discussion considers Defendant's arguments in the order they are set out in the Motion to Dismiss.

1. Rule 12(b)(6) in the context of employment discrimination and retaliation claims

Absent direct evidence of discrimination or retaliation, the *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973), burden-shifting analysis is appropriate in considering Plaintiff's claims. In this scheme, a plaintiff must first establish a prima facie claim of relief. *See generally Love-Lane v. Martin*, 355 F.3d 766, 786 (4th Cir. 2004) ("[T]he *McDonnell Douglas* framework, developed for Title VII, has been used to evaluate race discrimination claims under [§ 1981 as well].")." Under this scheme, once a plaintiff has established a prima facie case the burden shifts to the employer to demonstrate a legitimate, nondiscriminatory or nonretaliatory reason for its action. Then the burden shifts back to the plaintiff to demonstrate that reason was merely

pretextual. In *Woods v. City of Greensboro*, 855 F.3d 639, 648 (4th Cir. 2017), the Fourth Circuit noted that, while a plaintiff "need not plead facts sufficient to establish a prima facie case of race-based discrimination to survive a motion to dismiss," the "pleading standard established in *Iqbal* and *Twombly* applies[.]" Although a plaintiff need not plead a prima facie case of discrimination or retaliation to state a claim, reference to the prima facie case may nonetheless inform a court's evaluation of a motion to dismiss. *See Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003).

        2.      Race-based discrimination claims under Title VII and Section 1981[17]

Defendant argues Rule 12 dismissal is appropriate as to Plaintiff's allegations of race-based discrimination pursuant to both Title VII and Section 1981 because Plaintiff has not set out facts sufficient to establish a plausible claim of discrimination. Absent direct evidence of discrimination, which is not found in Plaintiff's pleading, to state a claim for race discrimination under Title VII, Plaintiff must allege: "(1) membership in a protected class; (2) that she was performing her job satisfactorily; (3) that she was subjected to an adverse employment action; and (4) that other employees who were not members of her protected class were treated more favorably or there is some other evidence giving rise to an inference of unlawful discrimination. *Ferguson v. Waffle House, Inc.*, 18 F. Supp. 3d 705, 719–20 (D.S.C. 2014); *see Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010); *Bryant v. Aiken Reg'l Med. Ctrs., Inc.,* 333 F.3d 536, 545 (4th Cir. 2003). While the elements of a race discrimination claim under 42 U.S.C. § 1981 are similar, Plaintiff is required to "allege facts making it plausible that, but for race, she would not have suffered the loss of a legally protected right under the statute." *Ali v. BC Architects Engineers, PLC*, 832 F. App'x 167, 171 (4th Cir. 2020) (citing *Comcast Corp. v. Nat'l*

---

[17] Defendant acknowledged at the hearing that it was not mounting a substantive challenge to Plaintiff's race-based *retaliation* claims.

*Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020)). The *Comcast* decision makes it clear that, under Section 1981, the "but-for" standard applies in the pleadings stage. Therefore, to survive a motion to dismiss that claim, the plaintiff must plead that race was the *but-for* cause of her injury. Def. Mem. 4-7.

Defendant submits Plaintiff's January 15, 2021 report to HR, found as ex. B to the Amended Complaint, does not reference any adverse action that took place based on racial discrimination. Def. Mem. 5. Defendant points out that the adverse action, her termination, took place after her reporting of alleged race discrimination and is more appropriately examined in connection with her race-based retaliation claims (whose substantive dismissal are not sought in the instant motion). Def. Mem. 5-6.[18]

Defendant submits the internal complaint attached as Exhibit B to the Amended Complaint does not include any claim that Plaintiff was subjected to an adverse employment action or treated differently based on her race. Defendant notes the allegations "certainly allege that there were disagreements or interpersonal issues between Plaintiff and Dr. Vivaldi, they do not allege unlawful discrimination." Def. Mem. 7.

Rather, Plaintiff's complaint to HR claims that her supervisor made a "sexist, misogynistic remark." ECF No. 21-2 at 3 (indicating Plaintiff had been subjected to discrimination by "harasser" Beth Vivaldi; and the "synopsis details the unwarranted, unwelcomed, unprofessional, inappropriate, micro-aggressive, discriminatory, and misogynistic statements"). *Id*. Plaintiff references several emails she had received from Vivaldi in October

---

[18] Defendant also notes that Plaintiff's placement on administrative leave with pay also took place after her report of discrimination. Defendant submits this leave-with-pay placement is not an adverse employment action under Title VII and 1981 discrimination jurisprudence. Def. Mem. 6. Plaintiff does not respond to this portion of Defendant's argument. This issue need not be reached here.

2019 and January 2020. Although the internal complaint indicates the emails are attached, they are not part of the documents included as attachments to the Amended Complaint. Plaintiff indicates these earlier emails included language about Plaintiff's being "very articulate" and "stunning looking," which Plaintiff perceived "conveyed [Vivaldi's] underlying assumption and bias that it is unusual for a person (of color like me) to be intelligent." *Id.* In a different email Vivaldi referred to Plaintiff as "Gal," that seemed improperly casual and showed "little regard for the demeaning and derogatory origin [] of the term." *Id.* Plaintiff concluded by indicating she believed Vivaldi's early emails "shed light on her racial and gender biases and prejudices and foreshadow the intense dynamic that currently exist[s] between her and her subordinates of color, and women, who resist or reject subjugating to those preconceived biases and prejudices." *Id.*

Construed liberally in Plaintiff's favor, however, the January 15, 2021 complaint does not complain of specific **adverse actions** that Plaintiff submits took place **because of her race**. The undersigned agrees with Defendant that Plaintiff has not set out claims of adverse employment actions that took place that were based on her race. In addition to the claims in the January 2021 internal complaint, Plaintiff's Amended Complaint's discrimination claim references how Plaintiff was placed on administrative suspension after making the complaint, which she describes as including a complaint to HR about discrimination. Am. Compl. ¶ 202. Plaintiff further submits she was "discriminated against" in "serious and tangible ways when [Defendant] failed to treat her the same as other directors, subjected her to drastically different terms and conditions in her employment, and terminated her employment." *Id.* ¶ 204.

Plaintiff has not tied her allegedly discriminatory treatment to her race, nor has she set out with any clarity what evidence she has to make a plausible claim of that nature. Instead, Plaintiff alleges that she was suspended, and subsequently terminated, claiming both are adverse

employment actions in *retaliation* for reporting race discrimination. She does not allege that she was **subjected to any discriminatory adverse employment action based on her race**. Plaintiff's more general allegations of disparate treatment based on race are not supported by her pleadings. As noted by Defendant, Plaintiff's pleading includes numerous allegations of issues between her and Vivaldi, including various accusations Vivaldi made about Plaintiff or her work product. *E.g.* Am. Compl. ¶ 50. While Plaintiff avers in conclusory fashion that Vivaldi "treated the Plaintiff differently based on her race and age," *id.* ¶ 50(f)(ii), Plaintiff never provides factual allegations to support that conclusory allegation. Rather, virtually all of the laundry list of "issues" between Vivaldi and Plaintiff relate to disagreements or interpersonal issues. None of them is pinned to any allegation of unlawful discrimination. The United States Supreme Court has made clear that a plaintiff must do more than make conclusory statements to state a claim. *See Iqbal,* 556 U.S. at 667–68; *Twombly,* 550 U.S. at 555. As the result, the undersigned is of the opinion that Defendant's Motion to Dismiss Plaintiff's allegations of race-based discrimination (as opposed to retaliation) should be granted.

This recommendation applies both to Plaintiff's race-based discrimination claims brought pursuant to Title VII and 42 U.S.C. § 1981. As to the Section 1981 claim, the court notes Plaintiff opted not to heed the court's instruction to "plead[] her separate causes of action," bearing in mind the proof necessary to establish each." Order 5. As to Section 1981, the court reminded Plaintiff at the hearing and in the October 2023 Order that "any claim brought pursuant to 42 U.S.C. § 1981 requires that Plaintiff plausibly plead facts from which it could be determined Plaintiff would not have suffered discrimination but for race." *Id.* at 5-6 (citing *Comcast*, 140 S. Ct. 1009, 1019). Instead, each of Plaintiff's three race-based causes of action

again combine her Title VII and Section 1981 race-based claims, offering no facts specific to pleading but-for causation).

Plaintiff's opposition to the Motion to Dismiss does not point to allegations that convince the court otherwise. Plaintiff merely submits that she was terminated, which is "the ultimate adverse employment action." Pl. Mem. 11. As noted above, the dismissal relates only to the race-based termination claim. Plaintiff's pleading ties her termination to her complaint to HR, making it more appropriately part of her retaliation claim. Further, Plaintiff pays short-shrift to the very precise but-for causation pleading-based requirement set out in *Comcast* and explained to her on several occasions. "Despite the Defendant's application of the 'but for' standard, the Plaintiff's complaint should survive a Motion to Dismiss due to the fact that pleadings are to [be] generously construe[d] in accordance with case law." Pl. Mem. 11 (citing *Goode v. Cent. Va. Legal Aid Soc'y, Inc*., 807 F.3d 619, 626 (4th Cir. 2015)). *Goode* does counsel courts to liberally permit amendment in appropriate situations. Plaintiff has already been given an opportunity to amend. Further, and importantly, *Comcast,* decided several years later, was plain in explaining that but-for causation must be *pleaded*. *Comcast*, 140 S. Ct. at 1019 ("To prevail [under Section 1981] a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right."). The court made this clear in its October 2023 Order. Order 5-6. Dismissal of Plaintiff's Section 1981 discrimination claims is appropriate.

3.    Hostile work environment

At the hearing Plaintiff's counsel had advised the court that Plaintiff's only hostile work environment claim was one for a retaliatory hostile work environment. Nonetheless, Plaintiff's Third Cause of Action in her Amended Complaint is a claim for "Retaliatory Hostile Work Environment and Hostile Work Environment in Violation of Title VII and 42 U.S.C. § 1981

Against Webster University." Am. Compl. ¶¶ 232-46. The Eleventh Circuit recently "emphasize[d] that substantive hostile-work-environment claims are distinct from retaliatory hostile-work-environment claims and should be pled in separate counts." *Terrell v. Sec'y, Dep't of Veterans Affs.*, 98 F.4th 1343, 1355–56 (11th Cir. 2024) (noting the two distinct causes of action have different elements and different standards of proof).

Defendant seeks dismissal of Plaintiff's claims of a race-based hostile work environment. Def. Mem. 7-8.[19] A prima facie discriminatory hostile work environment claim requires a plaintiff to show "(1) unwelcome conduct; (2) based on the plaintiff's sex [or race]; (3) sufficiently severe or pervasive to alter the plaintiff's conditions of employment and create an abusive work environment; and (4) that is imputable to the employer." *Roberts v. Glenn Indus. Grp., Inc*., 998 F.3d 111, 117 (4th Cir. 2021). To determine whether conduct was sufficiently severe or pervasive to alter the employee's terms and conditions of employment and create an abusive working environment based on a protected characteristic, the court examines the allegations both subjectively and objectively. *See, e.g., Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22 (1993). First, the employee must subjectively consider the conduct to be sufficiently severe or pervasive as to alter her conditions of employment. *See, e.g., Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270–71 (2001) (per curiam); *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998); *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (en banc). Second, a court views the conduct from the perspective of a reasonable person in the

---

[19] Defendant does not seek dismissal of the retaliatory hostile work environment claim under Title VII. For retaliatory hostile work environment claims, the Fourth Circuit has explained that Plaintiff must allege that the retaliatory conduct "(1) was unwelcome, (2) was sufficiently severe or pervasive that it would dissuade a reasonable worker from making or supporting a charge of discrimination, and (3) can be attributed to the employer." *Laurent-Workman v. Wormuth*, 54 F.4th 201, 218 (4th Cir. 2022).

employee's position to determine whether it is objectively severe or pervasive. *See, e.g., Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81–82 (1998); *Boyer-Liberto*, 786 F.3d at 277.

Similar to its challenges to Plaintiff's discrimination claims, Defendant argues Plaintiff has not set out sufficient facts to plausibly link any hostile treatment Plaintiff claims to have suffered **to her race**. Defendant also submits that Plaintiff's allegations do not rise to the level of objectively being considered "sufficiently severe or pervasive to alter the conditions of employment." The undersigned agrees. While Plaintiff has alleged what she believed to be unfair treatment by Vivaldi, she has offered no facts to support her claim that the unwelcome conduct was related to race. *See Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 282 (4th Cir. 2000) ("Law does not blindly ascribe to race all personal conflicts between individuals of different races. To do so would turn the workplace into a litigious cauldron of racial suspicion. Instead, legally sufficient evidence is required to transform an ordinary conflict . . . into an actionable claim of discrimination."). In addition, while Plaintiff has pleaded she believed the use of the word "gal" in a January 2020 email had racial connotations, "[t]he term gal is a race-neutral term." *Equal Emp. Opportunity Comm'n v. Vill. at Hamilton Pointe LLC*, No. 3:17-CV-00147-RLY-MPB, 2020 WL 13568924, at *32 (S.D. Ind. Sept. 29, 2020), *aff'd*, No. 22-2806, 2024 WL 2074326 (7th Cir. May 9, 2024). Further, a one-time use of that term objectively would not be sufficient to show "severe or pervasive" conduct.

Nothing in Plaintiff's opposition to the Motion to Dismiss changes this recommendation. Plaintiff generally argues that her Amended Complaint and the internal complaint to HR revealed that "Vivaldi was subjecting the Plaintiff to a workplace that was inflicting ridicule and insult with intimidation thrown in for good measure. The work environment was severe and pervasive." Pl. Mem. 13 (citing no cases or specific portions of the Amended Complaint in

support of her argument). Accepting all facts in the light most favorable to Plaintiff, Vivaldi's actions may have been unwelcomed by Plaintiff. However, unwelcome behavior that is related to general workplace conflict or issues of management styles is not sufficient. Plaintiff has provided no facts that support her conclusory supposition that Vivaldi's treatment of her was because of her race.

Plaintiff has not set out a plausible cause of action for a race-based hostile work environment claim under Title VII or Section 1981. Dismissal of that portion of Plaintiff's multi-faceted Third Cause of Action is appropriate. Again, as Plaintiff was given ample opportunity to replead the undersigned is of the opinion no further opportunity for amendment is necessary and would likely be futile.

4.  ADEA claims

At the hearing the court understood Plaintiff's counsel to state that Plaintiff was no longer pursuing any age-based claim under the ADEA. *See* Order 4 ("At the hearing Plaintiff's counsel clarified that Plaintiff was not seeking any relief based on gender or age."). After pointing that out, Defendant seeks dismissal of Plaintiff's Fourth Cause of Action is one for "Retaliation for Complaints Regarding Age Discrimination Against Webster University," Am. Compl. ¶¶ 247-63, because Plaintiff has not pleaded plausible allegations of status-based conduct based on Plaintiff's age. Def. Mem. 9-10.

In response, Plaintiff's counsel clarifies that she advised the court "there was not a claim for Age Discrimination based on questioning by the Court. The Plaintiff's attorney did not state there was not a retaliation claim under the Age Discrimination in Employment Act." Pl. Mem. 1. Plaintiff briefly responds substantively to Defendant's challenge only by arguing as follows:

> As set forth in the Order by the Court, the Plaintiff is not required to present every single fact regarding her case but to establish the basis for each claim which the

> Plaintiff did so. The Defendant has failed to present a valid reason why the Plaintiff's claims should be dismissed.

Pl. Mem. 14. Earlier in her responsive memorandum Plaintiff submits, "[a]s set forth in the complaint the Plaintiff did complain to Human Resources on January 15, 2021, regarding race and age treatment by Vivaldi.[20]" [Plaintiff's footnote 20 is a citation to "ECF No 1., State Court Documents, Complaint, Paragraph 45"]. *Id.* at 13. Other than the general citation to her original Complaint Plaintiff offers no discussion of facts she pleaded in support of her claim that she engaged in activity protected by the ADEA.

Plaintiff is correct that she need not set out "every single fact regarding her case." However, Plaintiff *is* required to set out facts that provide a basis for the elements of each pleaded claim. In the case of an age-based retaliation claim, Plaintiff can set out a plausible claim by alleging facts to show her prima facie case: (1) she engaged in protected activity; (2) an adverse employment action was taken against her; and (3) there was a causal link between the protected activity and the adverse action. *Laber v. Harvey*, 438 F.3d 404, 432 (4th Cir. 2006) (en banc).

Here, the undersigned agrees with Defendant that Plaintiff's ADEA retaliation claim is subject to Rule 12(b)(6) dismissal because she has not alleged she participated in any protected activity under the ADEA. An employee is engaged in protected activity if she has "opposed any practice made unlawful by" the ADEA (the opposition clause), or if she has "participated in any manner in an investigation, proceeding, or litigation under" the ADEA (the participation clause). *See* 29 U.S.C. § 623(d). Plaintiff cites only to a paragraph of her prior Complaint. In that paragraph Plaintiff included the full text of the January 21, 2021 internal complaint. *See* Original Compl. ¶ 45. While her Amended Complaint does not include a paragraph like this Plaintiff avers in paragraph 110 that, "[o]n January 15, 2021, [she] filed a complaint with Human

Resources. The Plaintiff's [sic] complained about Vivaldi's actions over the last year and her actions toward herself and Dr. McMaster." Am. Compl. ¶ 110. The internal complaint that includes the same language as that the original Complaint identified as having been submitted on January 21, 2021, is found as an attachment to the Amended Complaint. Ex. B. to Am. Compl., ECF No. 21-2 at 3.

Here, Plaintiff's January 2021 internal complaint to HR did oppose practices Plaintiff alleged were discriminatory. Importantly, however, nothing in the internal complaint (or elsewhere in Plaintiff's pleading) indicates she was opposing anything related to age-based discrimination.

The court notes that Plaintiff also avers that she submitted a formal complaint to HR on February 15, 2021. Am. Compl. ¶ 138 ("On February 15, 2021, the Plaintiff submitted a formal complaint through the Webster Human Resources Incident Report Form regarding Vivaldi creating a hostile work environment and discriminating against the Plaintiff."). Further, Plaintiff references an oral communication to HR's Kirby that took place on February 12, 2021, in which Plaintiff advised that she "felt that she was being treated differently and that she was being discriminated against based on her race and age." Am. Compl. ¶ 130. However, Plaintiff's pleading includes no further information about the substance of these February complaints, nor does she in any manner set out the substance of any age-related complaints. More is required.

Plaintiff's failure to plead facts supporting a plausible claim of an age-based protected activity is fatal to any claim of ADEA-based retaliation. Having been permitted the opportunity to amend her complaint Plaintiff failed to include facts to support any ADEA-related claim. That portion of Defendant's Motion to Dismiss should be granted.

5.     Timeliness issue

Finally, the court considers Defendant's claim regarding the appropriate timeframe to be considered for any Title VII claims. Defendant argues that Plaintiff has failed to exhaust her Title VII administrative remedies with respect to any conduct that occurred prior to May 6, 2020, which is the date her EEOC Charge indicates was the earliest date on which any discrimination took place. Charge, ECF No. 21-1 at 1; *see* Def. Mem. 8-9. Also related to timeframe, Defendant submits that any Title VII claims regarding conduct that took place outside the 300-day window before the filing of the March 26, 2021 Charge (*i.e.*, before May 30, 2020) are time-barred based on Title VII's limitations period. 42 U.S.C. § 2000e-5(e)(1) (requiring a charge be filed with the EEOC within 300 days of the alleged unlawful employment practice in "deferral jurisdictions" such as South Carolina).[20] More specifically, Plaintiff notes that some conduct referenced in Plaintiff's Amended Complaint took place between August 2018 and March 2020. Am. Compl. ¶¶ 38, 43, 44, 51, 55–67, 71, 73, 77–92); ECF No. 21-2 at 3 (Jan. 15, 2021 complaint to HR, referencing Vivaldi emails dated October 16, 2019 and January 21, 2020). Defendant notes that Plaintiff's EEOC Charge does not include these allegations in the narrative.

Rather than offer any detailed response as to Defendant's argument regarding exhaustion or timeliness, Plaintiff merely submits that, because Plaintiff has also brought race-related claims pursuant to 42 U.S.C. § 1981, Title VII's statute of limitations "does not apply[.]" Pl. Mem. 13-14. As noted above, it is recommended that Plaintiff's discrimination claims raised pursuant to 42 U.S.C. § 1981 are subject to dismissal for failure to adequately plead plausible claims, including the requisite but-for causation as made clear in the Supreme Court's *Comcast* decision. Plaintiff does concede the applicability of the 300-day window to Title VII claims, although she incorrectly hinges the window on the date she received her right to sue letter. *Id.* at 14. In fact,

---

[20] Both parties contemplate a 300-day limitations period for Title VII matters here.

the 300 day window looks back from the date the EEOC Charge was submitted. Here, the Charge was submitted March 26, 2021, making the 300-day look-back period go to May 30, 2020.

The undersigned agrees with Defendant that Plaintiff has failed to exhaust her administrative remedies as to any Title VII claims that occurred prior to May 6, 2020. Further, any Title VII claims of race-based discrimination that took place prior to May 30, 2020 are time-barred.

IV.    Conclusion and recommendation

For the reasons discussed above, the undersigned recommends Defendant's Motion to Dismiss be *denied* as to the request to dismiss pursuant to Rule 41 and be *granted* to the extent it seeks Rule 12(b)(6) dismissal of Plaintiff's claims for race-based discrimination, including her claim of a discriminatory hostile work environment, brought pursuant to Title VII and 42 U.S.C. § 1981; and all claims brought pursuant to the ADEA. If the district judge accepts this recommendation, Plaintiff's Amended Complaint will proceed as to her race-based, retaliation claims (including her claim of a retaliatory hostile work environment) only. Further, Plaintiff's Title VII-based claims will be limited to the timeframe discussed within.[21]

IT IS SO RECOMMENDED.

June 5, 2024                                          Kaymani D. West
Florence, South Carolina                     United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

---

[21] Plaintiff was given ample time to amend after a hearing in which potential deficiencies were discussed. Accordingly, the undersigned is of the opinion that further amendment would be futile. This matter should proceed to discovery and any further substantive challenges be raised at the Rule 56 stage.